746 So.2d 1215 (1999)
Fortunato N. CAMBARERI, Appellant,
v.
STATE of Florida, Appellee.
No. 98-3395.
District Court of Appeal of Florida, Fifth District.
December 17, 1999.
Paul Morris, of Law Office of Paul Morris, P.A., Coral Gables, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Bonnie Jean Parrish, Assistant Attorney General, Daytona Beach, for Appellee.
HARRIS, J.
This is that rare case which presents itself as a true whodunit.
On the morning of January 14, 1998, Victor Perry, from the vantage point of his home across the street from the Cambareris, observed Mrs. Cambareri arrive home carrying groceries. After she entered the home, Perry heard Mrs. Cambareri speaking loudly to occupants of the home. Inside the home were Rocco Papalia and Santos Turano. There was bad blood between Mrs. Cambareri and Papalia; indeed, Mrs. Papalia had heard Mrs. Cambareri tell Papalia that unless he moved from the area she would have Mr. Cambareri kill him. In the house on that morning, Mrs. Cambareri accused Papalia of telling others that Mrs. Cambareri and Turano were having an affair. When Mr. Cambareri joined the group, Mrs. Cambareri asked Papalia why he had broken her windshield and threatened to kill her. Mrs. Cambareri was obviously agitated, but Mr. Cambareri appeared calm. Papalia took Mr. Cambareri by the arm and said they should go for a walk.
Perry observed Mr. Cambareri and Rocco Papalia leave the house and, talking normally, walk down the street and out of sight. Although some neighbors indicated that they saw Cambareri and Papalia arguing in the road, Turano, who had followed them in his car, indicated they were acting normally and there was no indication that Mr. Cambareri had a gun. Perry observed Mrs. Cambareri walk out of the house and look down the street in the direction that Mr. Cambareri and Papalia had gone. She then got into her car and drove in that direction. She drove up to Cambareri and Papalia as they were in the *1216 roadway but Turano told her to leave. Turano indicated that he left the scene immediately after Mrs. Cambareri.
Perry saw Mrs. Cambareri return home and enter the garage. He then saw Mr. Cambareri return home "in a hurry" and heard the Cambareris having loud words. Some neighbors had heard gunfire. Mr. Papalia's body was found in the roadway with a bullet in the chest.
When the police arrived, Mr. Cambareri told them he needed to get something off his chest. He confessed that when Papalia tried to suffocate him with a jacket, he shot him. Cambareri also indicated he was upset because Papalia had been teasing and flirting with his wife. When the officers asked for the gun, Mr. Cambareri led to a drawer which was empty. The gun, registered in Mr. Cambareri's name, was later found in the garage with no fingerprints on the weapon. Mr. Cambareri has since recanted his confession.
Mr. Cambareri was indicted for first degree murder in that he intentionally caused the death of Papalia by shooting him in the chest. There were no other charges. At trial, the jury deadlocked. The judge, for whatever reason, gave a modified version of the Allen charge indicating that he would permit the jury thirty minutes to consider the issue further. At the end of the thirty minutes, the jury asked whether Cambareri could be guilty of manslaughter if, although he did not do the shooting, he failed to render assistance to the victim. The judge referred the jury to the manslaughter instruction given as a portion of the first degree murder charge. Subsequently, the jury returned a verdict of guilty of manslaughter but answered two specific questions by finding that Cambareri possessed a firearm but that he did not use it.
This does not appear to be a jury pardon but rather a compromise verdict. Although we do not know the jury position behind the initial 7-5 deadlock, it appears all too possible that some jurors who might have believed that Mr. Cambareri did not shoot Papalia were willing to convict him of manslaughter for not rendering assistance. For that reason, we must carefully scrutinize the modification of the Allen charge given in this case. See Dixon v. State, 603 So.2d 86, 88 (Fla. 5th DCA 1992) (a modified Allen charge takes on increased significance when there is a "lack of overwhelming or clear evidence of guilt"). We agree with defense that the charge given in this case was deficient in several respects which together constitute fundamental error requiring a reversal. First, the instruction gave the jury an initial time limit of thirty minutes. See Gahley v. State, 567 So.2d 456, 459 (Fla. 1st DCA 1990) (holding when giving an Allen charge, the trial court must avoid coercive deadlines). Second, the trial court told the jury that the law was clear and not subject to argument or discussion. It should have advised the jury that if it had any disagreement about the law, the court would clear the law for the jury. Third, the court advised the jury that the judge would wait in the courtroom for its decision. This again gave immediacy to the jury's deliberation. Finally, the court pointed out the amount of time already spent by the court on the matter and stated "we need to make sure that there is no way to reconcile the differences and reach a unanimous decision, which is required." See Bell v. State, 311 So.2d 179, 180 (Fla. 1st DCA 1975) (holding when a juror asks, "Do all six have to agree?" and the court replies, "Yes, Ma'am," the jury may construe this as meaning a verdict must be reached).
Because of the strong possibility that the modified Allen charge given in this case may well have caused the jury to compromise on a lesser verdict based on an invalid construction of the lawthat Cambareri could be guilty of manslaughter for not rendering assistance to the victim *1217 shot by anotherwe reverse for a new trial.
REVERSED and REMANDED.
W. SHARP, and PETERSON, JJ., concur.