ON MOTION FOR REHEARING, CLARIFICATION AND REHEARING EN BANC
 

 LEWIS, J.
 

 We deny the State’s motion for rehearing and rehearing en banc. We grant the State’s motion for clarification, withdraw our previous opinion, and substitute the following therefor.
 

 Steven Montgomery, Appellant, appeals his judgment and sentence for second-degree murder. He contends the trial court fundamentally erred in giving the standard jury instruction for manslaughter by act, as it erroneously suggests that intent to
 
 *604
 
 kill is an element of that crime. We agree with Appellant because the standard instruction imposed an additional element on the crime of manslaughter by act, and that offense was one step removed from the crime for which Appellant was convicted. Accordingly, we reverse Appellant’s judgment and sentence and remand the case for a new trial consistent with this opinion. This resolution renders the remaining issues moot.
 

 At Appellant’s trial for first-degree murder, the court instructed the jury on second-degree murder and manslaughter by act, as lesser-included offenses of the charged crime. The trial court gave the following instructions regarding second-degree murder:
 

 [T]o prove the crime of second degree murder the state has the burden of proving these three things: The first being that [the victim] is dead. Secondly, that the death was caused by the criminal act of Mr. Montgomery. Thirdly, that there was an unlawful killing of [the victim] by an act imminently dangerous to another and demonstrating a depraved mind without regard for human life.
 

 [[Image here]]
 

 Now in order to convict of second degree murder it is not necessary for the state to prove the defendant had an intent to cause death.
 

 The court instructed the jury that to prove the crime of manslaughter, the State had to prove “two things: The first being again that [the victim] is dead and, secondly, that Mr. Montgomery intentionally caused her death.” After an intervening instruction regarding excusable and justifiable homicide, the court continued, “In order to convict of manslaughter by intentional act it is not necessary for the state to prove that the defendant had a premeditated design to cause death.... ” These instructions are consistent
 
 [1]
 
 with the standard jury instructions for second-degree murder and manslaughter by act.
 
 See
 
 Fla. Std. Jury Instr. (Crim.) 7.4, 7.7.
 

 On appeal, Appellant contends that the giving of these instructions constituted fundamental error. To resolve this issue we must determine whether intent to kill is an element of the crime of manslaughter by act, and if not, whether the instructions given by the trial court had the effect of adding such an element, such that the instructions “taint[ed] the underlying fairness of the entire proceeding.”
 
 See Hankerson v. State,
 
 831 So.2d 235, 237 (Fla. 1st DCA 2002). For the reasons explained below, we hold that intent to kill is not an element of manslaughter by act and that the trial court fundamentally erred in giving instructions that suggested the State was required to prove intent to kill to prove the crime of manslaughter.
 

 Turning to the first step in our analysis, we note that there is a split of authority among Florida district courts as to whether manslaughter by act, under section 782.07, Florida Statutes, has intent to kill as an element. This split is based on opposing interpretations of the supreme court’s decision in
 
 Taylor v. State,
 
 444 So.2d 931 (Fla.1983), which held that attempted manslaughter was a cognizable crime in this state. In
 
 Hall v. State,
 
 951 So.2d 91, 96 (Fla. 2d DCA 2007) (en banc), the Second District interpreted
 
 Taylor
 
 as holding that “intent to kill is an element of attempted manslaughter” but did not be-
 
 *605
 
 lleve such a holding “require[d] a determination that an intent to kill is an element of manslaughter by act.” In contrast, the Fifth District opined, based on
 
 Taylor,
 
 that the words “act” and “procurement” in the manslaughter statute “obviously refer to acts evidencing an intent to kill, as required at common law for voluntary manslaughter.”
 
 Barton v. State,
 
 507 So.2d 638, 641 (Fla. 5th DCA 1987),
 
 rev’d on other grounds, State v. Barton,
 
 523 So.2d 152 (Fla.1988);
 
 see also State v. Sherouse,
 
 536 So.2d 1194, 1194-95 (Fla. 5th DCA 1989) (Cobb, J., concurring). The Fifth and Second Districts seem to agree that the supreme court held that intent to kill was an element of attempted manslaughter, but they disagree as to that holding’s significance to the elements of manslaughter.
 
 See Hall,
 
 951 So.2d at 96;
 
 Barton,
 
 507 So.2d at 641.
 

 As noted above, the Second District, in
 
 Hall,
 
 opined that the
 
 Taylor
 
 court’s holding regarding the intent element of attempted manslaughter did not control its determination of the intent element of manslaughter by act.
 
 Hall,
 
 951 So.2d at 96. Because the Second District concluded that
 
 Taylor
 
 did not control its analysis, that court determined the intent element of manslaughter by act primarily by reference to policy considerations.
 
 See id.
 
 at 95-96. One of the Second District’s concerns was that recognizing an intent-to-kill element would “elevate the crime above second-degree murder,” which requires a lesser showing of intent.
 
 Id.
 
 We agree with the Second District that this result would be undesirable. We also note, however, that the Second and Fifth Districts’ interpretation of
 
 Taylor
 
 yields another unsettling result. If
 
 Taylor
 
 held that intent to kill is an element of attempted manslaughter, then the crime of attempted manslaughter would, in a sense, be elevated above aggravated battery, even though aggravated battery is statutorily categorized as a more serious offense, punishable to a greater extent.
 
 See §
 
 784.045(2) (categorizing aggravated battery as a second-degree felony); 782.07(1) (categorizing manslaughter by act as a second-degree felony); 777.04(4)(d) (providing that the attempt to commit a second-degree felony is a third-degree felony). Thus, under the Second and Fifth Districts’ view of
 
 Taylor,
 
 a person who attacked another with an intent to kill might be punished to a lesser extent than one who attacked another ■without an intent to kill, as attempted manslaughter is only a third degree felony, while aggravated battery is a second-degree felony.
 

 We take a different view of the
 
 Taylor
 
 opinion, the result of which is to avoid the problems discussed in the
 
 Hall
 
 opinion, as well as the problems created by interpreting
 
 Taylor
 
 as holding that intent to kill is an element of attempted manslaughter. The
 
 Taylor
 
 court isolated its holding as follows:
 

 We ... hold that there may be a crime of attempted manslaughter. We reiterate, however, that a verdict for attempted manslaughter can be rendered only if there is proof that the defendant had the requisite intent to commit an unlawful act. This holding necessitates that a distinction be made between the crimes of “manslaughter by act or procurement” and “manslaughter by culpable negligence.” For the latter there can be no corresponding attempt crime. This conclusion is mandated by the fact that there can be no intent to commit an unlawful act when the underlying conduct constitutes culpable negligence. On the other hand, when the underlying conduct constitutes an act or procurement, such as an aggravated assault, there is an intent to commit the act, and thus, there exists the requisite intent to support attempted manslaughter.
 

 444 So.2d at 934. In addition to emphasizing that the crime of attempted man
 
 *606
 
 slaughter exists only where the completed offense would be manslaughter by act or procurement, this express holding identifies the intent element of attempted manslaughter.
 
 Id.
 
 We interpret this language as requiring the State to prove only an intent to commit an act that would have resulted in the death of the victim except that the defendant was prevented from killing the victim or failed to do so.
 
 [2]
 
 This interpretation of the
 
 Taylor
 
 holding results from our reading of its plain language, as well as Florida’s general concept of the crime of attempt, which requires the jury to find that the defendant would have completed the relevant underlying offense except that he or she was either prevented from doing so or failed to do so.
 
 See State v. Brady,
 
 745 So.2d 954, 957 (Fla.1999) (listing the elements of attempted second-degree murder). If the
 
 Taylor
 
 court had intended to recognize an intent-to-kill element for the crime of attempted manslaughter by act, rather than an “intent to commit an unlawful act,” it would have stated so in its direct holding. Although Judge Cobb correctly notes in his concurring opinion in
 
 Sherouse
 
 that the
 
 Taylor
 
 court referred to an intent to kill when discussing voluntary manslaughter (i.e., manslaughter by act or procurement), this language can only be construed as dicta when compared with the
 
 Taylor
 
 court’s direct statement of its holding.
 
 See Sherouse,
 
 536 So.2d at 1194-95;
 
 Taylor,
 
 444 So.2d at 934 (expressing its direct holding without referring to an intent to kill).
 

 While
 
 Taylor
 
 addressed attempted manslaughter, rather than the completed offense of manslaughter by act, its holding controls our analysis. In
 
 Gentry v. State,
 
 437 So.2d 1097, 1098-99 (Fla.1983), the supreme court explained this state’s position on the level of intent required for the crime of attempt vis-a-vis the level of intent required for the crime attempted to be committed. The
 
 Gentry
 
 court held that where the completed offense would be a general intent crime, the attempt to commit such an offense also involves general, rather than specific, intent.
 
 Id.
 
 The
 
 Gentry
 
 holding was expressed as follows:
 

 We now hold that there are offenses that may be successfully prosecuted as an attempt without proof of a specific intent to commit the relevant completed offense. The key to recognizing these crimes is to first determine whether the completed offense is a crime requiring specific intent or general intent. If the state is not required to show specific intent to successfully prosecute the completed crime, it will not be required to show specific intent to successfully prosecute an attempt to commit that crime.
 

 Id.
 
 This rationale suggests that the same intent is required for an attempt as is required for a completed offense. The
 
 Taylor
 
 court’s direct holding indicates that attempted manslaughter is a general intent crime, requiring only an intentional act, rather than a specific intent to kill. Accordingly, based on the rule articulated in
 
 Gentry,
 
 we hold that manslaughter by act also requires only an intentional unlaw
 
 *607
 
 ful act, rather than an intent to kill.
 
 See Gentry,
 
 437 So.2d at 1098-99.
 

 Having determined that the State is not required to prove intent to kill in order to establish the crime of manslaughter by act, we must next consider whether the instruction read in the instant case improperly imposed that additional element. The relevant portion of the instruction read in the instant case tracked the language of the standard jury instructions for manslaughter by act, providing that the State had to prove that Appellant “intentionally caused [the victim’s] death” in order to establish that he committed manslaughter. The
 
 Hall
 
 court opined, in dicta, that the same instruction did not impose an intent-to-kill element, but rather indicated that the State simply had to prove an intentional act that caused the death of the victim. 951 So.2d at 96. We disagree. The average juror would likely interpret the instruction as requiring an intent to kill, as there is no direct language regarding an intentional act. The word “intentionally” in the instruction modifies the word “caused.” Thus, the instruction would be naturally understood as requiring a finding that the defendant intended for the victim to die. The likelihood of such an interpretation is illustrated by the fact that the phrase “intentionally caused the death of’ is commonly associated with first-degree murder in charging documents.
 
 See, e.g., Cambareri v. State,
 
 746 So.2d 1215, 1216 (Fla. 5th DCA 1999) (noting that the defendant “was indicted for first degree murder in that he intentionally caused the death of [the victim] by shooting him in the chest”);
 
 Lorance v. Alabama,
 
 770 So.2d 644, 647 (Ala.Crim.App.1999) (reciting that the indictment for murder alleged that the defendant had “intentionally caused [the victim’s] death”);
 
 Lincecum v. State,
 
 736 S.W.2d 673, 674 (Tex.Crim.App.1987) (stating that an indictment for capital murder alleged the defendant had “intentionally caused [the victim’s] death by strangling her” while “intentionally committing and attempting to commit the offense of kidnapping [sic], robbery or aggravated sexual assault”).
 

 Unlike in the instruction for second-degree murder, there is no language in the instruction for manslaughter focusing on the defendant’s intent to do the act that caused the victim’s death, as opposed to intent to accomplish the result of death. The manslaughter by act instruction would be more accurate if it provided that the State was required to prove that the defendant “committed an intentional act that caused the death of the victim.” Because this language is not present, the instruction is misleading. The subsequent instruction that manslaughter does not require a premeditated design does not cure its defect, as both the court system and the average reasonable person recognize a distinction between a premeditated design and an instantaneous formation of intent.
 
 See, e.g., Carpenter v. State,
 
 785 So.2d 1182 (Fla.2001) (citation omitted) (noting the distinction between premeditated intent and “mere intent”);
 
 Green v. State,
 
 715 So.2d 940, 943 (Fla.1998) (citation omitted);
 
 Neal v. State,
 
 854 So.2d 666, 670 (Fla. 2d DCA 2003) (citations omitted). Accordingly, we hold that the instructions, as given, improperly imposed an additional element on the lesser-included offense of manslaughter.
 

 Appellant contends that, due to the erroneous instructions, the jury was prevented from returning a verdict for manslaughter, even though, through its verdict of second-degree murder, it found that Appellant did not intend to kill the victim. This contention, as well as the contention that the defect in the instructions constituted fundamental error, is supported by our decision in
 
 Hankerson.
 
 In
 
 Hankerson,
 
 we concluded that “[t]he addition of an element regarding a lesser included offense ... taints the underlying fairness
 
 *608
 
 of the entire proceeding.” 831 So.2d at 287. In finding fundamental error, we observed that the jury in
 
 Hankerson
 
 “may not have returned a verdict as to a lesser included offense because it found there was insufficient proof of intent to kill.”
 
 Id.
 
 This language applies precisely to the instant case. Appellant has correctly identified the nature of the errors in
 
 Hankerson
 
 and the instant case:
 

 [I]f the jury found the defendant did not intend to kill, the erroneous instruction effectively precluded the jury from choosing between two possible verdicts: second degree murder or manslaughter by act. Under the erroneous instruction, the jury was directed to pick the greater of these two offenses.... Such interference with the jury’s deliberative process tainted the underlying fairness of the entire proceeding.
 

 Because the jury in the instant case found that Appellant did not intend to kill the victim, we are constrained, under the authority of
 
 Hankerson,
 
 to reverse Appellant’s conviction for second-degree murder and remand the case for a new trial consistent with this opinion.
 

 In determining that there is no intent-to-kill element in manslaughter by act, we have come into conflict with the Fifth District. Although we reached our decision by a different route, we agree with the Second District regarding the elements of the crime of manslaughter by act. We believe that the contrary holding espoused by the Fifth District in
 
 Barton
 
 leaves a gap in the law, as it would not allow for a manslaughter conviction in cases where the defendant commits an unlawful act that unintentionally results in the death of the victim. Because we are unable to reconcile our holding with the Fifth District’s position, we certify conflict with
 
 Barton.
 
 We also believe, irrespective of the deci-sional conflict, that our decision passes upon an important issue that should be addressed by the Florida Supreme Court. Although the supreme court recently approved a modification to the standard jury instructions for manslaughter by act that is consistent with our holding, it has not yet reviewed this issue with respect to substantive law.
 
 See In re: Standard Jury Instructions in Criminal Cases
 
 — Re
 
 port No. 2007-10,
 
 997 So.2d 403 (Fla. 2008).
 
 [3]
 
 Accordingly, we certify the following question of great public importance:
 

 IS THE STATE REQUIRED TO PROVE THAT THE DEFENDANT INTENDED TO KILL THE VICTIM IN ORDER TO ESTABLISH THE CRIME OF MANSLAUGHTER BY ACT?
 

 REVERSED; REMANDED; QUESTION CERTIFIED; CONFLICT CERTIFIED.
 

 HAWKES, C.J., and WEBSTER, J., concur.
 

 [1]
 

 . The trial court did slightly depart from the standard instructions. The standard instructions provide that, to prove manslaughter by act, the State need not prove that the defendant had a "premeditated intent.” Fla. Std. Jury Instr. 7.7. The trial court replaced this phrase with "premeditated design.”
 

 [2]
 

 . We recognize that the concept of attempted manslaughter without an intent to kill is difficult to fathom. We can envision few scenarios from which it would be appropriate to charge attempted manslaughter, as opposed to attempted murder or aggravated battery. Nonetheless, we see no other way to give effect to the
 
 Taylor
 
 court's choice to omit any reference to an intent to kill in its express holding. Moreover, we note that many of the problems inherent in the recognition of attempted manslaughter without an intent to kill also inhere in the recognition of the crime of attempted second-degree murder without an intent to kill. Yet this state’s highest court has decided that Florida will recognize the crimes of attempted manslaughter and attempted second-degree murder, and it has unequivocally stated that proof of attempted second-degree murder does not require proof of an intent to kill.
 
 State v. Brady,
 
 745 So.2d 954, 957 (Fla.1999).
 

 [3]
 

 . The modified instruction reads, "In order to convict of manslaughter by intentional act, it is not necessary for the State to prove that the defendant had a premeditated intent to cause death,
 
 only an intent to commit an act which caused death. See Hall v. State,
 
 951 So.2d 91 (Fla. 2d DCA 2007).”
 
 In re: Std. Jury Instr. in Crim. Cases-Report No. 2007-10,
 
 997 So.2d 403, 403 (Fla.2008). In approving this modification, the supreme court emphasized, "[W]e express no opinion on the correctness of this instruction and remind all interested parties that this authorization forecloses neither requesting additional or alternative instructions nor contesting the legal correctness of the instruction.”
 
 Id.
 
 Thus, the supreme court has made it clear that it has not reviewed this issue on the merits yet. This statement also suggests that the reasoning in
 
 Hall
 
 has not yet been tested by Florida’s highest court.