CASANUEVA, Chief Judge.
Following a jury trial, Robert J. Pollock was convicted of second-degree murder by discharging a firearm resulting in the victim’s death. In his petition filed pursuant to Florida Rule of Appellate Procedure 9.141(c), Mr. Pollock contends that appellate counsel was ineffective for failing to argue that the trial court fundamentally erred by giving the then standard instruction for manslaughter by act.[1] We agree and reverse Mr. Pollock’s second-degree murder conviction, vacate the sentence, and remand for a new trial.
The offense of second-degree murder is only one step removed from the necessarily-lesser included offense of manslaughter. State v. Montgomery, 39 So.3d 252, 259 (Fla.2010). Manslaughter may be committed in one of three ways: by act, by procurement, or by culpable negligence. Id. at 256; § 782.07(1), Fla. Stat. (2005). In the present case, the trial court instructed the jury on manslaughter by act and manslaughter by culpable negligence. This court affirmed Mr. Pollock’s judgment and sentence in Pollock v. State, 22 So.3d 83 (Fla. 2d DCA 2009) (table decision). Almost two months prior to the filing of the initial brief in Pollock, the First District in Montgomery v. State, — So.3d - (Fla. 1st DCA 2009), 2009 WL 350624, approved, 39 So.3d 252 (Fla.2010), reversed Mr. Montgomery’s conviction for second-degree murder and remanded for a new trial, holding that the standard jury instruction improperly imposed an additional element of intent to kill on the offense of manslaughter by act and was therefore fundamentally erroneous. No case had previously so held.
As this court stated in Del Valle v. State, 52 So.3d 16, 18 (Fla. 2d DCA):
To establish a claim of ineffective assistance of appellate counsel, the petitioner must show counsel’s deficient performance and that “ ‘the deficiency of that performance compromised the appellate process to such a degree as to undermine confidence in the fairness and correctness of the appellate result.’ ” Downs v. Moore, 801 So.2d 906, 909-10 (Fla.2001) (quoting Wilson v. Wainwright, 474 So.2d 1162, 1165 (Fla.1985)).
The facts in Del Valle indicate that the First District’s decision in Montgomery issued over three months prior to the filing of Mr. Del Valle’s initial brief in the direct appeal. Id. at 17. This court concluded that Mr. Del Valle’s appellate counsel’s performance was deficient when he failed to argue that the manslaughter by act instruction was fundamentally erroneous based on the decision of the First District in Montgomery. Id. at 18. Because Montgomery issued almost two months *697 prior to the filing of the initial brief in the direct appeal in the present case, we similarly conclude that Mr. Pollock’s appellate counsel’s performance was deficient.
In Del Valle, we noted the supreme court granted review of the First District’s Montgomery decision prior to the filing of the initial brief in Mr. Del Valle’s direct appeal.[2] Id. The supreme court, in Montgomery, 39 So.3d at 257-59, held that where Mr. Montgomery was convicted of second-degree murder, the trial court’s giving of the then standard jury instruction on manslaughter by act, a necessarily lesser — included offense of second-degree murder, constituted fundamental error. The Del Valle court therefore concluded that Mr. Del Valle was prejudiced by his appellate counsel’s deficient performance because had counsel argued that the manslaughter by act instruction was fundamentally erroneous, this court would have been compelled to certify conflict with the First District’s decision in Montgomery, and he would have ultimately been afforded relief as part of the direct appeal process. 52 So.3d at 18-19.
In Del Valle, we noted that we must apply the law existing at the time of the appeal to determine whether appellate counsel’s performance was deficient but that we must apply the current law to determine whether the petitioner is entitled to relief. Id. at 18. In the present case, having determined that the performance of Mr. Pollock’s appellate counsel was deficient, we must now apply the law as it currently stands to determine his entitlement to relief. Here, unlike in Del Valle, the trial court instructed the jury on manslaughter by culpable negligence as well as manslaughter by act.
Subsequent to the supreme court’s decision in Montgomery, this court issued Barros-Dias v. State, 41 So.3d 370, 372 (Fla. 2d DCA 2010), in which we held that the manslaughter by act instruction was not fundamentally erroneous where the jury was also instructed on manslaughter by culpable negligence because the jury was not directed by the erroneous manslaughter by act instruction to find Mr. Barros-Dias guilty of the greater offense of second-degree murder. This court in Haygood v. State, 54 So.3d 1035, 1037 (Fla. 2d DCA 2011), followed the precedent established in Barros-Dias and affirmed Mr. Haygood’s second-degree murder conviction because the trial court gave the jury both the erroneous manslaughter by act instruction and the culpable negligence manslaughter instruction. However, the Haygood court noted that “[ajrguably, the evidence presented at trial is inconsistent with a theory of manslaughter by culpable negligence.” Id. at 271. Because of this, the court certified a question regarding whether the error in the manslaughter by act instruction is fundamental when the jury is also instructed on a culpable negligence theory of manslaughter even though the evidence does not support that theory. Id.
In the present case, the victim, Nicki Hendrix, was the former girlfriend of Mr. Pollock. At the time of her disappearance, she was dating Dorsie France and was living with Mr. Pollock and Mr. France in Mr. France’s house. Her body was subsequently found buried under a newly poured concrete slab in the backyard of Mr. France’s house. Ms. Hendrix died from a gunshot wound to the head. She had no other injuries. A spent bullet was found under the bathtub in the bathroom *698 of Mr. France’s house. Subsequent testing revealed the spent bullet and the bullet recovered from the victim were fired from the same gun. There was testimony from the State’s witnesses that Mr. France was aware that the victim was cheating on him and stealing his money and drugs. The strongest evidence that it was Mr. Pollock who killed the victim was the testimony of Tamila Cagle. Ms. Cagle stated that Mr. Pollock told her that he and Ms. Hendrix were arguing about money and her treatment of Mr. France when Mr. Pollock hit Ms. Hendrix with a glove and then shot her. This occurred in or just outside of the bathroom. Ms. Cagle testified that she had been in a relationship with Mr. France prior to his dating Ms. Hendrix. Following Ms. Hendrix’s disappearance, she resumed her relationship with Mr. France. Ms. Cagle testified that at that time she was engaging in sexual relations with both Mr. France and Mr. Pollock.
Larry Hummel, a State’s witness testified that after Ms. Hendrix’s disappearance, Ms. Cagle and Mr. Pollock got into an argument that escalated into a physical altercation and Ms. Cagle pulled a knife on Mr. Pollock. Mr. Hummel testified to incriminating statements made by Mr. Pollock in regard to Ms. Hendrix. He also indicated that he had been angry at Mr. Pollock’s boldness in inviting his wife on a trip to Las Vegas.
At the jury charge conference, the prosecutor requested that the jury be instructed on manslaughter by culpable negligence as a lesser-included offense of second-degree murder. Mr. Pollock objected to the giving of the instruction, contending that the evidence did not support a theory of manslaughter by culpable negligence. In arguing for the instruction, the prosecutor noted that the lead detective had testified that based on the damage to the tiles in the bathroom, the bullet under the tub looked like it had ricocheted, and the prosecutor indicated that she did not want the jury to be concerned about which of the two bullets had ricocheted. The trial court agreed to give both the manslaughter by act and the manslaughter by culpable negligence instructions. In closing argument, the prosecutor contended that Mr. Pollock had deliberately shot Ms. Hendrix in the head. She stated: “It was one bullet that missed and one that didn’t.”
We conclude that the evidence did not support a culpable negligence theory of manslaughter. The State presented evidence that Mr. Pollock intentionally fired at the victim following an argument. Ordinarily, pursuant to our opinion in Hay-good, we would deny Mr. Pollock relief and certify the same question that we certified in Haygood. However, Mr. Pollock properly objected to the trial court’s instructing the jury on manslaughter by culpable negligence on the basis that the evidence did not support it. Thus, the error in the giving of that instruction was preserved for purposes of appeal. We therefore hold that under these circumstances, the error in the manslaughter by act instruction constituted fundamental error regardless of the fact that the jury was also instructed on manslaughter by culpable negligence. Because a new appeal would be redundant in this instance, we reverse Mr. Pollock’s second-degree murder conviction, vacate the sentence, and remand for a new trial. See Del Valle, 52 So.3d at 19.
Petition granted.
ALTENBERND and KELLY, JJ., Concur.

. The supreme court has amended the manslaughter by act instruction on an interim basis. See In re Amendments to Standard Jury Instructions in Criminal Cases-Instruction 7.7, 41 So.3d 853 (Fla.2010).

. The initial brief in the direct appeal in the present case was filed prior to the supreme court’s granting review of Montgomery. However, the opinion granting review issued prior to the filing of the answer brief.