# Third District Court of Appeal

## State of Florida

Opinion filed February 28, 2018.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D17-1605
Lower Tribunal No. 04-10361
_____

### James C. Marshall,
Petitioner,

vs.

### The State of Florida,
Respondent.

A Case of Original Jurisdiction – Habeas Corpus.

Carlos J. Martinez, Public Defender, and Robert Kalter, Assistant Public Defender, for petitioner.

Pamela Jo Bondi, Attorney General, and Marlon J. Weiss and Michael W. Mervine, Assistant Attorneys General, for respondent.

Before LOGUE, SCALES and LINDSEY, JJ.

SCALES, J.

James Marshall petitions this Court for a writ of habeas corpus pursuant to Florida Rule of Appellate Procedure 9.141(d), claiming that he is entitled to a new trial on the charge of second degree murder based on ineffective assistance of appellate counsel.  Specifically, Marshall argues that appellate counsel failed to file a supplemental brief in his direct appeal citing to Montgomery v. State, 70 So. 3d 603 (Fla. 1st DCA 2009) (Montgomery I), which held that giving the then standard jury instruction for manslaughter by act constituted fundamental error, effectively denying him the opportunity to be placed in the Montgomery pipeline.  Though this Court previously denied Marshall's first petition raising this same ground,[1] for the following reasons, we grant the instant, successive petition based on the manifest injustice doctrine and remand for a new trial.

### 1.  Underlying Facts and Procedural Background

The State charged Marshall by information with second degree murder for strangling the victim, Marie Sanders, to death on April 2, 2004.  The case proceeded to trial on November 14, 2006.  Eyewitness testimony at trial established that Marshall accosted the victim in her bed while she was sleeping.  When the victim fell backwards off the bed during the ensuing struggle, Marshall straddled the victim – who by then was lying face down on the floor – and proceeded to choke her for at least four minutes.  During this time, Marshall

---

[1] See Marshall v. State, 75 So. 3d 286 (Fla. 3d DCA 2011) (table).

resisted attempts by the victim and two bystanders who tried to stop him. Marshall's attack continued despite one of the bystanders actually hitting Marshall with a kitchen pan. Marshall even continued to choke the victim after the police arrived at the scene with guns drawn. Paramedics attempted to revive the victim, but she died at the scene.

At the close of all the evidence, after instructing the jury of the elements of second degree murder, the trial court instructed the jury, without objection, as to the lesser included offenses of manslaughter by act and manslaughter by culpable negligence, giving the then standard jury instructions as to those crimes.[2] The jury found Marshall guilty of second degree murder as charged. The trial court adjudicated Marshall guilty of second degree murder and, on December 26, 2006, sentenced Marshall to forty-five years in prison.

Marshall, through counsel, appealed his conviction. On direct appeal, Marshall did not challenge the validity of the manslaughter by act jury instruction that had been given at trial. This Court affirmed his conviction with a written opinion issued on July 22, 2009. See Marshall v. State, 15 So. 3d 811 (Fla. 3d DCA 2009). This Court's mandate issued on August 7, 2009. Marshall thereafter filed a *pro se* petition for belated discretionary review in the Florida Supreme

---

[2] The trial transcripts reflect that the prosecutor did not make manslaughter by culpable nelgligence a focus of closing argument.

Court, but voluntarily dismissed that petition on November 5, 2009. See Marshall v. State, 22 So. 3d 538 (Fla. 2009) (table).

### 2. The Postconviction Proceedings

#### a. Montgomery I and Montgomery II

On February 12, 2009, while Marshall's direct appeal was still pending in this Court, the First Distrist issued its opinion in Montgomery I. In Montgomery I, our sister court found that the trial court had fundamentally erred in giving the then standard jury instruction for manslaughter by act because the instruction erroneously suggested that intent to kill was an element of that crime. 70 So. 3d at 608. The Montgomery I court ordered a new trial for Montgomery, but certified the issue to the Florida Supreme Court as one of great pubic importance. Id. The Florida Supreme Court accepted jurisdiction of Montgomery I's certified question on May 7, 2009, again, while Marshall's direct appeal was still pending in this Court; yet, Marshall's appointed appellate counsel did not notify this Court of either the Montgomery I decision, or that the Florida Supreme Court had accepted jurisdiction to answer the question certified in Montgomery I.

On April 8, 2010, the Florida Supreme Court approved the First District's decision in Montgomery I "to the extent that it held that manslaughter by act does not require proof that the defendant intended to kill the victim and concluding that in this case, the use of the standard jury instruction on manslaughter constituted

4

fundamental error." State v. Montgomery, 39 So. 3d 252, 260 (Fla. 2010) ("Montgomery II").

### b. Marshall's Rule 3.850 motion

While the record is unclear as to exactly when, Marshall notified his appellate counsel of the Montgomery proceedings. On May 21, 2010, Marshall's appellate counsel sent Marshall a letter that acknowledged counsel's oversight. Attached to counsel's letter was a draft Florida Rule of Criminal Procedure Rule 3.850 postconviction motion alleging ineffective assistance of both trial counsel and appellate counsel, for Marshall to file *pro se*. That postconviction motion alleged that (i) Marshall's trial counsel had been ineffective for failing to object the manslaughter by act jury instruction at trial, and (ii) Marshall's appellate counsel had been ineffective for failing to file a supplemental brief in Marshall's direct appeal, missing the opportunity to place Marshall in the Montgomery pipeline. Counsel's letter to Marshall also contained an affidavit signed by counsel in which counsel averred, in relevant part, "I was ineffective as appellate counsel by failing to recognize the error committed by the trial court and thus deprived the defendant/petitioner of effective assistance of counsel on appeal, in violation of his Sixth Amendment rights, and I therefore join in the defendant/petitioner's motion for the relief requested therein."

In June 2010, Marshall filed in the lower court his *pro se* rule 3.850 motion and accompanying affidavit, both of which had been prepared by his appellate counsel. The trial court denied Marshall's *pro se* rule 3.850 motion,[3] and this Court, without elaboration, affirmed the trial court's denial of Marshall's rule 3.850 motion. Marshall v. State, 56 So. 3d 11 (Fla. 3d DCA 2011) (table).

### c. Marshall's Rule 9.141(d) Petitions Alleging Ineffective Assistance of Appellate Counsel and *Haygood I* and *Haygood II*

In February 2011, Marshall timely[4] filed with this Court his first *pro se* rule 9.141(d) petition. Marshall's petition alleged (as did his improper rule 3.850

---

[3] Specifically, the trial court found that Marshall's trial counsel was not ineffective for failing to anticipate Montgomery I, and that Marshall's ineffective assistance of appellate counsel claim was not cognizable in a rule 3.850 motion.

We note here the not-so-insignificant appellate rule governing the proper procedural mechanism for alleging ineffective assistance of *appellate* counsel: Florida Rule of Appellate Procedure 9.141(d) provides that such a claim be filed in, and treated by, *the appellate court* as an original proceeding. The rule outlines the specfic procedures, mechanism, and requirements for such an allegation. A rule 3.850 motion filed in the trial court is not the appropriate mechanism for a defendant to assert the ineffective performance of appellate counsel. Knight v. State, 394 So. 2d 997, 999 (Fla. 1981) ("[S]ince petitioner's claim for relief is predicated on the assertion of ineffective assistance of appellate counsel, such relief can *only* be granted by habeas corpus in the appellate court . . . .") (emphasis added).

[4] See Fla. R. App. P. 9.141(d)(5) ("A petition alleging ineffective assistance of appellate counsel on direct review shall not be filed more than 2 years after the judgment and sentence become final on direct review unless it alleges under oath with a specific factual basis that the petitioner was affirmatively misled about the results of the appeal by counsel. In no case shall a petition alleging ineffective assistance of appellate counsel on direct review be filed more than 4 years after the judgment and sentence become final on direct review.").

6

motion) that his appellate counsel had been ineffective for failing to file anything with this Court during the pendency of Marshall's direct appeal notifying this Court of the proceedings in Montgomery I. Marshall's petition alleged that appellate counsel's ineffectiveness in this regard caused Marshall to miss an opportunity to be placed in the Montgomery pipeline, and thereafter to obtain relief under Montgomery II.

While this petition was still pending, Marshall filed a notice of supplemental authority and moved to stay this Court's consideration of his petition pending resolution by the Florida Supreme Court of a question certified to it by our sister court in Haygood v. State, 54 So. 3d 1035 (Fla. 2d DCA 2011) ("Haygood I"). The question certified in Haygood I was whether, in light of the Supreme Court's pronouncements in Montgomery II, the trial court committed fundamental error by giving the flawed manslaughter by act jury instruction where the standard jury instruction for manslaughter by culpable negligence was also given, despite there being no evidence to support a theory of manslaughter by culpable negligence. Id. at 1038. The Second District found that there was no fundamental error under these circumstances. At the time, the law in this District was similar to the law in the Second District: any harm from giving the improper manslaughter by act instruction was alleviated if the trial court also gave the jury the manslaughter by

7

culpable negligence instruction.  See Cubelo v. State, 41 So. 3d 263 (Fla. 3d DCA 2010) (distinguishing Montgomery II) ("Cubelo I").

The Florida Supreme Court accepted jurisdiction of Haygood I on May 5, 2011.  This Court, however, did not grant Marshall's stay motion.  Instead, on July 20, 2011, this Court, without elaboration, summarily denied Marshall's rule 9.141(d) petition and denied Marshall's motion for rehearing that also cited to Haygood I.  See Marshall v. State, 75 So. 3d 286 (Fla. 3d DCA 2011) (table).[5]

On February 13, 2013, the Florida Supreme Court answered the question certified to it in Haygood I, ultimately holding that "giving the erroneous manslaughter by act instruction, which we found to be fundamental error in [Montgomery II] is also fundamental error even if the instruction on manslaughter by culpable negligence is given where the evidence supports manslaughter by act but does not support culpable negligence and the defendant is convicted of second-degree murder."  Haygood v. State, 109 So. 3d 735, 736 (Fla. 2013) (footnote omitted) ("Haygood II").  Haygood II held that where (i) the erroneous manslaughter by act instruction is given, (ii) the defendant is convicted of a crime

_____

[5]  On or about September 26, 2011, in case number 3D11-2467, Marshall filed his second rule 9.141(d) petition with this Court alleging ineffective assistance of appellate counsel.  Though not entirely clear on the record before us, the parties agree that this second petition raised the same ineffective assistance of appellate counsel issue that he raised in his first petition.  This Court entered a clerk's order denying the second petition on December 22, 2011.

8

not more than one step removed from manslaughter (such as second degree murder), and (iii) the evidence supports a finding of manslaughter by act, but not a finding of manslaughter by culpable negligence, the defendant is entitled to a new trial even if the jury is correctly instructed on manslaughter by culpable negligence. Id. at 743.

*d. Marshall's Instant Habeas Corpus Petition Alleging Manifest Injustice*

On July 14, 2017, Marshall filed the instant, *pro se* "Successive Petition for Writ of Habeas Corpus," once again arguing ineffective assistance of appellate counsel with respect to appellate counsel's missing an opportunity to put Marshall in the Montgomery pipeline. Acknowledging that the instant petition is successive, Marshall additionally argues that it would be a manifest injustice not to grant it.

After ordering the State to respond to Marshall's *pro se* motion, this Court appointed the public defender to represent Marshall, permitted the parties to file supplemental briefs, and set Marshall's petition for oral argument.

**3. Analysis**

In addressing the instant petition for writ of habeas corpus, we consider: (1) whether giving the faulty manslaughter by act instruction in this case was fundamental error, even where the culpable negligence instruction was also given; (2) if so, whether appellate counsel was ineffective in failing to bring to this Court's attention Montgomery I while Marshall's direct appeal was still pending;

9

and (3) if so, whether the doctrine of manifest injustice allows this Court to rectify its earlier error of denying Marshall's prior petitions that raised these same issues.

### a. Fundamental Error under Haygood II

As a preliminary issue, we must first decide whether Marshall has even made a meritorious claim. We find that he has done so.

It is now well-settled that the then standard jury instruction for manslaughter by act that was given at Marshall's trial erroneously required the jury to find that Marshall intended to kill the victim in order to find Marshall guilty of that crime. Montgomery II, 39 So. 3d at 256. It is also now well-settled that giving the standard jury instruction for manslaughter by culpable negligence does not cure the error of giving the faulty manslaughter by act instruction, where there is no evidence from which the jury could have concluded that the victim was killed due to the defendant's culpable negligence. Haygood II, 109 So. 3d at 743.

Here, the evidence introduced at trial was that Marshall choked the victim to death over a period of at least four minutes, resisting attempts by the victim, two bystanders, and the police to stop him. On these facts, we agree with Marshall that the evidence in this case "does not reasonably support a finding that [the victim's] death occurred due to culpable negligence of the defendant." Id. at 741 (finding the culpable negligence instruction was not warranted where the defendant head-butted, choked and elbowed the victim, causing subdural bleeding and leading to

10

eventual death); <u>Kerney v. State</u>, 217 So. 3d 138, 143 n.4 (Fla. 3d DCA 2017) (finding the evidence introduced at trial that the defendant strangled the victim to death did not reasonably support a finding that the victim's death occurred due to culpable negligence). Therefore, because Marshall was convicted of second degree murder – an offense that is not more than one step removed from the lesser offense of manslaughter – and because there was no evidence from which a jury could have reasonably concluded that the victim died due to Marshall's culpable negligence, giving the culpable negligence instruction in this case did not "cure the fundamental error in giving the erroneous manslaughter by act instruction." <u>Haygood II</u>, 109 So. 3d at 743. We have little difficulty concluding that giving the jury the erroneous manslaughter by act instruction in this case constituted fundamental error.

### b. Ineffective Assistance of Appellate Counsel on Direct Appeal

We next address whether appellate counsel was ineffective for failing to file a supplemental brief in Marshall's direct appeal citing to <u>Montgomery I</u>. The test for ineffective assistance of appellate counsel is whether: (i) the petitioner establishes that appellate counsel's performance was deficient; and (ii) that such deficient performance so prejudiced the petitioner as to undermine confidence in the result of the appeal. <u>See</u> <u>Rutherford v. Moore</u>, 774 So. 2d 637, 643 n.4 (Fla. 2000) (citing to <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), finding that the

11

standard for ineffective assistance of appellate counsel parallels the standard for ineffective assistance of trial counsel). For the following reasons, we find that Marshall's appellate counsel was deficient.

At the time Marshall filed the direct appeal of his judgment and sentence for second degree murder, no Florida appellate court had held that the then standard instruction for manslaughter by act was erroneous, nor that giving the erroneous instruction constituted fundamental error. While Marshall's appeal was still pending, however, the First District issued its opinion in Montgomery I, holding that the instruction was fundamentally erroneous. Had Marshall's appellate counsel timely filed a supplemental brief citing to Montgomery I, this Court would have then either (i) followed Montgomery I,[6] (ii) declined to follow Montgomery I, citing conflict with Montgomery I, or (iii) distinguished Montgomery I on the ground that the manslaughter by culpable negligence instruction had been given. In either event, irrespective of this Court's actual adjudication of the issue, this Court's citation to Montogomery I would have placed Marshall in the Montgomery pipeline. See Nieves v. State, 22 So. 3d 691 (Fla. 2d DCA 2009) ("Nieves I").

We need not speculate as to what would have happened had Marshall been placed in the Montgomery pipeline, as we find that the procedural and substantive

---

[6] Because this Court had yet to address this issue in a written opinion at the time Marshall's direct appeal was pending, it is possible that the panel considering his direct appeal would have agreed with Montgomery I, in which case Marshall would have been granted immediate relief.

history of the Second District's <u>Nieves</u> case is particulary instructive on this issue. In that case, Nieves appealed his conviction and sentence for second degree murder, claiming that the trial court committed fundamental error by giving the then standard jury instruction for the lesser included offense of manslaughter by act. <u>Id.</u> at 692. Nieves relied upon <u>Montgomery I</u>, which was then pending review before the Florida Supreme Court, to support his claim. The Second District affirmed Nieves's conviction and sentence, certifying conflict with <u>Montgomery I</u> based on a recent, prior opinion of that Court which had found that the instruction was not fundamentally erroneous, and distinguishing <u>Montgomery I</u> on the basis that the jury had also been instructed on manslaughter by culplable negligence. <u>Id.</u> (citing <u>Zeigler v. State</u>, 18 So. 3d 1239 (Fla. 2d DCA 2009)).

Nieves then sought review before the Florida Supreme Court, which, according to the Florida Supreme Court Case Docket, then stayed the <u>Nieves</u> proceeding pending the Court's disposition of <u>Montgomery II</u>. After the Florida Supreme Court issued its opinion in <u>Montgomery II</u>, the Court then issued an order to show cause why the Second District's <u>Nieves I</u> decision should not be quashed and remanded for reconsideration in light of <u>Montgomery II</u>. Before the Florida Supreme Court took any action on the show cause order, however, the Second District issued its opinion in <u>Haygood I</u>. The Florida Supreme Court then stayed the Nieves proceeding pending the Court's disposition of <u>Haygood II</u>.

13

The Florida Supreme Court Case Docket reflects that after the Florida Supreme Court issued its opinion in Haygood II, the Court issued an order to show cause why the Second District's Nieves I decision should not be quashed and remanded for reconsideration upon application of Haygood II. On February 17, 2014, the Florida Supreme Court issued an opinion granting review in the Nieves proceeding, quashing the Second District's Nieves I decision, and remanding for reconsideration in light of Haygood II. See Nieves v. State, 137 So. 3d 1021 (Fla. 2014) (table) ("Nieves II").

On remand from Nieves II, the Second District once again affirmed Nieves's conviction and sentence for second degree murder, this time finding that giving the erroneous manslausghter by act instruction was not fundamental error on a separate basis not at issue here. See Nieves v. State, 144 So. 3d 649, 650 (Fla. 2d DCA 2014) ("Nieves III"). The Florida Supreme Court then once again granted review, quashing the Second District's Nieves III decision, and remanding for reconsideration upon application of a recent Florida Supreme Court decision on the unrelated issue. See Nieves v. State, 177 So. 3d 1269 (Fla. 2015) (table) ("Nieves IV"). On remand from Nieves IV, the Second District finally granted Nieves relief, finding that because "the jury instruction for manslaughter by act given in this case did indeed constitute fundamental error, . . . we must reverse and remand

14

for a new trial." <u>Nieves v. State</u>, 184 So. 3d 1148 (Fla. 2d DCA 2015) ("<u>Nieves V</u>").

As the <u>Nieves</u> cases demonstrate, had Marshall been placed in the <u>Montgomery</u> pipeline when this Court affirmed his conviction and sentence for second degree murder on direct appeal, we find it extremely likely, if not virtually certain, that Marshall ultimately would have been granted the new trial that he now seeks in his instant petition. We therefore find that appellate counsel was ineffective for failing to file, during the pendency of Marshall's direct appeal, a supplemental brief in this Court citing to <u>Montgomery I</u>,[7] and that such deficient performance so prejudiced Marshall as to undermine confidence in the result of the appeal.

*c. The Manifest Injustice Doctrine*

Finally, we must adjudicate whether appellate counsel's deficiency, raised in Marshall's instant successive petition, implicates the manifest injustice doctrine. Generally, successive rule 9.141 habeas petitions alleging the exact same issues as previously adjudicated are unauthorized. <u>Xiques v. Dugger</u>, 571 So. 2d 3, 4 (Fla. 2d DCA 1990) ("A successive petition regarding ineffective appellate counsel, <u>much like a successive m</u>otion under Florida Rule of Criminal Procedure 3.850,

[7] The State argues that appellate counsel cannot be ineffective for failing to predict future changes in the legal landscape that occur years after a defendant's sentence and conviction become final. While we generally agree with this premise, as <u>Nieves</u> demonstrates, this is not such a case.

15

may be summarily denied."). The manifest injustice doctrine, however, provides a very limited exception to this general rule. Johnson v. State, 226 So. 3d 908, 910 (Fla. 4th DCA 2017) (finding that rule 9.141 habeas corpus "[r]elief may be granted even on a successive petition or claim where failing to do so would result in manifest injustice"). Indeed, "appellate courts have 'the power to reconsider and correct erroneous rulings [made in earlier appeals] in exceptional circumstances and where reliance on the previous decision would result in manifest injustice.'" State v. Akins, 69 So. 3d 261, 268 (Fla. 2011) (alteration in original) (quoting Muehleman v. State, 3 So. 3d 1149, 1165 (Fla. 2009)).[8]

At the time Marshall filed his first, timely rule 9.141(d) petition alleging ineffective assistance of appellate counsel on direct appeal, this Court had held that giving the erroneous manslaughter by act instruction was not fundamental error when, as here, the jury was also instructed on manslaughter by culpable negligence. See Cubelo I, 41 So. 3d at 267-68. While Marshall's first petition was still pending, however, the Second District issued Haygood I and the Florida Supreme Court accepted jurisdiction in that case. Had this Court either (i) granted Marshall's motion to stay this Court's consideration of Marshall's petition pending

---

[8] In so holding, the Akins court expressly rejected the State's contention that the law of the case doctrine barred the district court from granting a successive claim. Akins, 69 So. 3d at 268; see also Coleman v. State, 128 So. 3d 193, 194 (Fla. 5th DCA 2013) (rejecting the State's argument that the law of the case doctrine barred the appellate court from reconsidering its prior denial of a habeas petition alleging ineffective assistance of appellate counsel, citing Akins).

16

the Florida Supreme Court's disposition in <u>Haygood II</u>, or (ii) denied Marshall's petition with an opinion or citation to this Court's <u>Cubelo I</u> decision, Marshall could have sought and obtained relief from the Florida Supreme Court. See <u>Cubelo v. State</u>, 137 So. 3d 1019 (Fla. 2014) (table) (quashing <u>Cubelo I</u>, and remanding for reconsideration in light of <u>Haygood II</u>) ("<u>Cubelo II</u>") ; see also <u>Cubelo v. State</u>, 137 So. 3d 1193 (Fla. 3d DCA 2014) (reversing the defendant's conviction and sentence for second degree murder under <u>Haygood II</u>, and remanding for a new trial, upon remand from Florida Supreme Court) ("<u>Cubelo III</u>").

Under similar factual and procedural circumstances, our sister courts have granted successive rule 9.141(d) petitions under the manifest injustice doctrine, when, as here, the failure of appellate counsel to notify the appellate court of <u>Montgomery</u> proceedings resulted in the petitioner not being placed in the <u>Montgomery</u> pipeline. See <u>Wardlow v. State</u>, 212 So. 3d 1091, 1094 (Fla. 2d DCA 2017) (granting the defendant's successive rule 9.141 petition under <u>Haygood II</u> based on the manifest injustice doctrine); <u>Page v. State</u>, 201 So. 3d 207, 209 (Fla. 5th DCA 2016) (granting habeas corpus relief under <u>Haygood II</u> based on the manifest injustice doctrine where the appellate court had previously granted habeas corpus relief to similarly situated defendants, and where the appellate court had

previously dismissed Page's prior ineffective assistance of appellate counsel claim without elaboration).

As the Second District explained in <u>Wardlow</u>:

> At the time Mr. Wardlow filed his [first] petition, this court had not held that the then-standard jury instruction constituted fundamental error, and even after the supreme court's <u>Montgomery</u> [II] opinion issued, this court held that the error in the standard instruction was not fundamental when, as in Mr. Wardlow's case, the jury was also instructed on manslaughter by culpable negligence. However, had this court denied Mr. Wardlow's [first] petition with an opinion or a citation, Mr. Wardlow could have sought and obtained relief from the Florida Supreme Court.
> . . . In order to avoid manifest injustice, both the Fourth and Fifth Districts have granted new trials to petitioners after denying without citation or explanation ineffective assistance of appellate counsel claims based on the failure to argue the fundamental error explained in <u>Montgomery</u>. Because we conclude that to deny Mr. Wardlow relief under these circumstances would result in a manifest injustice, we grant Mr. Wardlow relief.
> Mr. Wardlow has established that the denial of his [first] petition filed under rule 9.141(c)[9] without written opinion or citations is an incongruous and unfair result.

<u>Wardlow</u>, 212 So. 3d at 1093-94 (citations omitted).

Consistent with the decisions of our sister courts based on virtually identical fact patterns, we grant the instant petition because denying Marshall relief in this case, under these highly individualized circumstances, would be manifestly unjust.

## *4. Conclusion*

---

[9] Rule 9.141(c) has been renumbered to rule 9.141(d).

Because it would result in a manifest injustice to deny Marshall relief under the particular factual and procedural circumstances of this case, we grant the instant petition, vacate the judgment and sentence for second degree murder, and remand for a new trial.

Petition granted.