PER CURIAM.
This case is before the Court for review of the decision of the Second District Court of Appeal in Akins v. State, — So.3d -, 2009 WL 5125174 (Fla. 2d DCA 2009). In its decision the district court ruled upon the following question, which the court certified to be of great public importance:
IF A DEFENDANT HAS BEEN DECLARED TO BE A HABITUAL OFFENDER BEFORE THE IMPOSITION OF HIS INITIAL SPLIT SENTENCE, WHEN THE DEFENDANT LATER VIOLATES PROBATION AND HAS HIS PROBATION REVOKED, DOES THE DEFENDANT LOSE HIS STATUS AS A HABITUAL OFFENDER IF THE TRIAL COURT DOES NOT REPEAT THIS STATUS AT THE SENTENCING HEARING ON VIOLATION OF PROBATION?
Id. at-. We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. For the reasons expressed below, we answer the certified question in the affirmative.

FACTS AND PROCEDURAL HISTORY

On January 18, 1991, in the Circuit Court of the Sixth Judicial Circuit in and for Pinellas County, Florida, Michael Eugene Akins was adjudicated guilty of the sale and possession of cocaine, a second-degree felony, and sentenced as a habitual felony offender[1] (HFO) to thirty years in prison for the following reasons:
*264 [I]n '75 and '84 and '87, he had three felonies. The '75 felony was a grand theft. The '84 was a sale and possession. The '87 was a sale and possession of marijuana. His other prior record was a dealing in stolen property. That was it. But he classified because of the three prior felonies.
Akins received a true split sentence, under which he was to serve the first twenty-years of his sentence in prison, and the remaining portion as a suspended sentence to be satisfied by probation. The Second District affirmed Akins’ judgment and sentence on direct appeal. See Akins v. State, 591 So.2d 187 (Fla. 2d DCA1991).
After serving twelve years, Akins was released from prison in 2003. Subsequently, Akins committed technical violations of his probation twice by testing positive for cocaine. The first violation occurred on July 15, 2008. On September 26, 2003, Akins entered an admission to a charge of violation of probation (VOP) and the court continued him on probation. As part of the court order, Akins entered the Goodwill rehabilitation treatment program. According to the Department of Corrections (DOC) reports, Akins performed well and consistently tested negative for cocaine. During this time, Akins completed the program, did not commit any new law violations, and made continual payments as required by the terms of his probation. The State filed an affidavit of VOP, which Akins did not contest. The second violation occurred on June 11, 2004, when Akins was arrested after again testing positive for cocaine. Initially, Akins denied the allegations, but on October 1, 2004, Akins entered a plea withdrawing his prior denial and entering an admission to the VOP charge.
On November 19, 2004, the trial court conducted a sentencing hearing. During the sentencing hearing, Akins’ defense counsel presented mitigation and referred to Akins’ designation as an HFO. Defense counsel acknowledged that “Mr. Miglore [the prosecutor] [is] going to ask for the maximum, 10 years.” Akins’ probation officer recommended that Akins be placed on community control for two years for the VOP. Defense counsel then stated, “I’m asking the court for an appropriate punishment and I’m asking the court to consider several factors. First of all, the nature of his habitualization.” Defense counsel asked the court to either terminate Akins’ probation, or alternatively, to follow the recommendation of Akins’ probation officer of two years community control. The prosecutor directed the court’s attention to the transcript of the hearing held on September 26, 2003, on the prior VOP and the colloquy that transpired between the court and Akins. The prosecutor asked the court to enforce the deal that Akins made with the State during that hearing. The 2003 colloquy proceeded as follows:
THE COURT: You’re familiar with the transcript of the last time that you were before the Court before you changed your plea?
THE DEFENDANT: True, sir.
THE COURT: We acknowledged that you had been sentenced to 30 years. We acknowledged that you did 20.
THE DEFENDANT: True, sir.
THE COURT: Correct?
THE DEFENDANT: Yes, sir.
THE COURT: All right. And then I said, ‘You are 50 years old.”
THE DEFENDANT: Yes, sir.
*265 THE COURT: And I said, “You are too old for that.”
And you responded, ‘Tes, Sir.”
THE DEFENDANT: True.
THE COURT: I said, “We are going to give you one last chance.”
You said, “Thank you, sir.”
THE DEFENDANT: True.
THE COURT: I said, “Dabble in drugs and you are going to do the last 10.” Do you remember that?
THE DEFENDANT: Yes, sir.
THE COURT: You answered, “Thank you, sir.”
THE DEFENDANT: Yes, sir.
THE COURT: I asked this question on page 10, line 14: “Do you have any doubt that I will not impose that 10 years for you?”
You answered, “No.”
I said, “I mean, you come back here on another dirty urine or I find out that you’re doing something else unlawful, then we just say good-bye,” right?
THE DEFENDANT: True, sir.
THE COURT: And you said, “I appreciate it.”
Akins acknowledged that the court gave him a fair warning at the 2003 sentencing hearing. He also acknowledged that the court told him if he tested positive for cocaine again, “we’re going to say goodbye.” Notwithstanding Akins’ acknowledgment of the fair warning, the trial court decided not to impose the full balance of the suspended portion of Akins’ original sentence. The trial court explained:
THE COURT: I am going to take into consideration the fact that you’ve entered a plea.
THE COURT: I’m also going to take into consideration that the Department of Corrections is probably going to take away some of the gain time that you might have got on that additional — the first 20 years. They’re probably going to take some time away that you thought you had earned.
THE COURT: So what I’m going to do is I’m going to sentence you to five years. And I’m going to give you credit for the time that you’ve served on the charge of violation of probation.
The trial court found that Akins was entitled to 289 days credit for time served in the county jail since his arrest on the first VOP. The judge went on to state:
THE COURT: [T]he only reason I didn’t give you the 10 is because I know that that [Department of Corrections] is going to take some [gain] time away from you on that 20 years that you’ve already served. That’s the way they work. And I don’t control the Department of Corrections, so I’m trying to give you some equity here. But I’m also letting you know that you’ve had your last chance the last time. So you — in effect, out of the 10 years that you had, I’ve imposed five.
THE COURT: And we’re just going to leave it go at that.
THE COURT: And you’re not any longer going to be on probation. So when you get out of prison, you are on your own.
That same day, the trial court filed a judgment adjudicating Akins guilty of the violation of probation. At that time, the sentencing order did not contain any language regarding Akins’ designation as an HFO.
Subsequently, Akins filed a motion seeking additional jail credit. On February 7, 2005, the trial court amended Akins’ sen *266 tence to allow 270 days, instead of 239 days, of credit for time served.
On April 29, 2005, on its own motion, the trial court amended the judgment to adjudicate Akins as an HFO. The amended judgment reflects the following:
* The defendant is adjudicated a habitual felony offender and is sentenced to an extended term in accordance with the provision of 775.084(4)(a), Florida Statutes. * amended 4/29/05 per court order dated 4/22/05.
On November 20, 2005, Akins filed a motion to vacate, set aside, or correct judgment and sentence pursuant to Florida Rules of Criminal Procedure 3.850, 3.800(a), and 3.800(b) in the trial court. On January 16, 2006, Akins filed an amended motion to vacate, set aside, or correct judgment and sentence. Akins alleged that it was illegal to sentence him as an HFO because there was no oral pronouncement or written judgment made at his VOP sentencing designating him as an HFO and that his due process rights were violated because he was not present when the amendment was made.
Akins also filed an appeal in the Second District, seeking review of his 3.800(a) motion and filed a motion seeking review of a nonappealable rule 3.800(c) order. See Akins v. State, 926 So.2d 412, 413 (Fla. 2d DCA 2006). Akins alleged that the amendment of his sentence offended double jeopardy. Id. at 413. The Second District concluded that it lacked jurisdiction to review Akins’ double jeopardy claim because Akins’ motion to mitigate and his appeal from the denial of the motion were filed before the amended sentence was rendered. Id. Moreover, the Second District concluded that the record did not establish that Akins first challenged the amendment in the trial court. Id. Thus, the Second District dismissed the appeal without prejudice to his right to raise the issue in a rule 3.800(a) motion. See id.
On June 18, 2007, the trial court ordered the State to respond to Akins’ January 16, 2006, amended rule 3.850 motion. Later, on October 29, 2007, the trial court entered its final order denying defendant’s amended motion to vacate, set aside, or correct judgment and sentence. In its order, the trial court acknowledged that it did not “specifically announce that the Defendant’s sentence was as an HFO.” However, the trial court explained that “a sentencing judge was not required to use the magic words ‘habitual felony offender’ in order to effectuate a legal sentence where it was obvious from the record that the trial court found that the defendant qualified as an HFO and intended to and did impose an HFO sentence.” The trial court concluded that “the fact that the Court acknowledged the Defendant’s original HFO sentence and then sentenced him accordingly demonstrates that this Court’s intention was to sentence the Defendant as an HFO.”
On November 29, 2007, Akins filed a notice of appeal in the trial court regarding the final order summarily denying his motion to vacate, set aside, or correct judgment and sentence. On December 18, 2007, Akins, through collateral counsel, filed his initial brief in the Second District. In his initial brief, Akins alleged that the trial court erred in denying Akins’ amended motion to vacate, set aside, or correct judgment and sentence because (1) Akins’ sentence was illegal and he was entitled to have the HFO designation removed from his sentence; (2) the subsequent imposition of the HFO status amounted to a double jeopardy violation under this Court’s decision in Ashley v. State (Ashley II), 850 So.2d 1265, 1267 (Fla.2003); (3) the subsequent imposition of the HFO status is inconsistent with the decisions in White v. State, 892 So.2d 541 (Fla. 1st *267 DCA 2005), and Evans v. State, 675 So.2d 1012 (Fla. 4th DCA 1996); (4) Akins is distinguishable from O’Neal v. State, 862 So.2d 91 (Fla. 2d DCA 2003); (5) the trial court’s amendments to Akins’ sentence did not amount to the mere ministerial function of correcting a scrivener’s error; and (6) the trial court’s failure to make specific oral or written findings precluded the subsequent amendment to Akins’ judgment and sentence designating him as an HFO. On November 7, 2008, the Second District per curiam affirmed the trial court’s denial. See Akins v. State, 996 So.2d 860, 860 (Fla. 2d DCA 2008) (table). Akins filed a motion for rehearing or clarification in the Second District, which was denied on December 9, 2008.
On December 15, 2008, Akins, pro se, filed a motion to correct sentence pursuant to rule 3.800(a) in the trial court. Akins alleged that (1) it was illegal to retroactively sentence him as an HFO because there was no oral pronouncement or written judgment made at the time of his sentencing designating him as an HFO; (2) the April 29, 2005, amendment to his judgment adjudicating him as an HFO offended double jeopardy; and (3) the trial court’s actions denied him due process because neither he nor his attorney was provided notice or an opportunity to respond to the amendment. On December 30, 2008, the trial court issued an order denying Akins’ motion to correct sentence. The trial court found that the claim was barred by res judicata and the law of the case doctrine because the trial court had previously heard and denied an identical claim from Akins. The trial court further found that the claim was barred because, on appeal, the Second District per curiam affirmed the trial court’s previous denial of Akins’ identical motion. See Akins, 996 So.2d at 860. The mandate issued on January 15, 2009.
On January 8, 2009, Akins, pro se, filed a Notice of Appeal in the trial court, appealing the denial of his motion. In his initial brief, he argued that the trial court erred in denying his pro se Motion to Correct Sentence, which was filed in the trial court on December 15, 2008. Akins maintained that the trial court’s amendment to his judgment, designating him as an HFO, was illegal, offended double jeopardy, and denied him due process. He alleged that the increase in his designation gave the DOC the authority to forfeit 2673 days of earned gain-time.
This time, the Second District reversed the trial court’s denial and held that Akins’ sentence was illegal because the trial court failed to announce that the sentence imposed on the VOP remained an HFO designation. See Akins, — So.3d at -. The Second District relied on this Court’s decision in Ashley II and the Fourth District’s decision in Evans, which was approved by this Court’s decision in Ashley II, in concluding that modification of Akins’ sentence in 2005 offended double jeopardy. See Akins, — So.3d at-. Noting that the issue in Akins was not identical to Ashley II and that it appeared to be in conflict with Mann v. State, 851 So.2d 901 (Fla. 3d DCA 2003), the Second District reversed and remanded the trial court’s order denying Akins’ December 15, 2008, motion to correct sentence and certified the aforementioned question as one of great public importance. See Akins, — So.3d at-.
Pursuant to Florida Rule of Appellate Procedure 9.330, the State filed a timely motion for rehearing with attachments on January 14, 2010. The State raised the following arguments: (1) the Second District overlooked that Akins previously raised an identical claim which the Second District denied in Akins, 996 So.2d 860 (table); (2) collateral estoppel barred sue- *268 cessive review of Akins’ claim; (3) Akins’ case did not contain a manifest injustice that would except it from collateral estop-pel; (4) double jeopardy was not offended by the amendment because Akins had no expectation of finality regarding his sentence; (5) the Second District overlooked that double jeopardy does not apply to sentencing in a noncapital case where the sentence has been challenged; (6) the Second District overlooked that Akins was distinguishable from Ashley II and Evans; (7) sentencing a prisoner in a noncapital case pursuant to the habitual offender statute does not implicate double jeopardy concerns; (8) Akins received the enhanced punishment because of his recidivism, so neither due process nor double jeopardy were implicated; (9) neither the federal nor the state proscription against double jeopardy precluded clarification of Akins’ designation as an HFO; and (10) the Second District failed to consider the trial court’s reference to Akins’ original status as an HFO during the sentencing. On January 25, 2010, Akins, pro se, timely filed a response to the state’s motion for rehearing. On April 22, 2010, the Second District denied rehearing without elaboration.
On May 10, 2010, the State filed a Motion to Stay Mandate in the Second District. On May 19, 2010, the Second District granted the motion and stayed issuance of the Second District’s mandate until July 15, 2010.
Meanwhile, on May 11, 2010, the State filed a Notice to Invoke Discretionary Jurisdiction in this Court. This Court granted the State’s motion to stay regarding the proceedings below on June 1, 2010. The order to stay was issued on June 10, 2010. That same day, this Court accepted jurisdiction and required only merits briefing. This review followed.

ANALYSIS

Alleged Procedural Bars

The State contends that the law of the case doctrine and collateral estoppel barred the Second District from addressing this claim below. We disagree. Under Florida law, appellate courts have “the power to reconsider and correct erroneous rulings [made in earlier appeals] in exceptional circumstances and where reliance on the previous decision would result in manifest injustice.” Muehleman v. State, 3 So.3d 1149, 1165 (Fla.2009) (alteration in original) (recognizing this Court’s authority to revisit a prior ruling if that ruling was erroneous) (quoting Parker v. State, 873 So.2d 270, 278 (Fla.2004)); see State v. J.P., 907 So.2d 1101, 1121 (Fla.2004) (same); Parker v. State, 873 So.2d 270, 278 (Fla.2004) (same); see also Fla. Dep’t of Transp. v. Juliano, 801 So.2d 101, 106 (Fla.2001) (“[A]n appellate court has the power to reconsider and correct an erroneous ruling that has become the law of the case where a prior ruling would result in a ‘manifest injustice.’ ” (quoting Strazzulla v. Hendrick, 177 So.2d 1, 3 (Fla.1965))). Because we conclude that the trial court’s subsequent imposition of an HFO designation to Akins’ judgment and sentence violated double jeopardy and amounted to an illegal sentence, we also conclude that the Second District was proper in addressing Akins’ claim to correct his illegal sentence.

The Certified Question

“A double jeopardy claim based upon undisputed facts presents a pure question of law and is reviewed de novo.” Pizzo v. State, 945 So.2d 1203, 1206 (Fla. 2006).
An illegal sentence is “one that imposes a punishment or penalty that no judge under the entire body of sentencing statutes and laws could impose under any *269 set of factual circumstances.” Williams v. State, 957 So.2d 600, 602 (Fla.2007); see also State v. McBride, 848 So.2d 287, 289 (Fla.2003). In the instant case, we address a sentence that violates double jeopardy by a postsentencing enhancement that is clear from the record and is thus illegal.
The federal proscription against double jeopardy provides: “[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb.” amend. V, U.S. Const. Similarly, Florida’s proscription against double jeopardy provides: “No person shall be ... twice put in jeopardy for the same offense.” Art. I, § 9, Fla. Const. Generally, both the federal and state proscriptions apply to criminal cases and provide three separate constitutional protections: (1) they protect against a second prosecution for the same offense after acquittal; (2) they protect against a second prosecution for the same offense after conviction; and (3) they protect against multiple punishments for the same offense. See Delemos v. State, 969 So.2d 544, 546 (Fla. 2d DCA 2007) (citing United States v. DiFrancesco, 449 U.S. 117, 129, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980)).
In the instant case, our focus is on the third type of constitutional protection — protection against multiple punishments for the same offense. This protection is the genesis for the general rule that once a sentence has been imposed, the sentencing hearing has ended, and the defendant has begun to serve his sentence, the sentence may not thereafter be made more onerous, such as by extending the term of imprisonment. See, e.g., Troupe v. Rowe, 283 So.2d 857, 859 (Fla.1973).
We have explained that imposition of a true split sentence means that the trial court has effectively sentenced the defendant in advance for a probation violation and is not later permitted to order a period of incarceration to exceed the sentence because to do so would violate double jeopardy. See Poore v. State, 531 So.2d 161, 164-65 (Fla.1988), superseded by statute on other grounds, § 948.06(6), Fla. Stat. (1989).
In the case at bar, Akins received a true split sentence, which consists of a total period of confinement with a portion of the confinement period suspended and the defendant placed on probation for that suspended portion. Here, Akins does not dispute that the trial court, at the time of sentencing, had the authority to sentence him up to ten years on the original suspended sentence and that its sentence of five years was within that limitation. Rather, Akins argues that the five-year sentence should not have subsequently been amended to reflect an HFO designation because the trial court failed to impose that designation during the oral pronouncement when it revoked Akins’ prior sentence and imposed a five-year sentence.
“Generally, courts have held that a written order must conform to the oral pronouncement ... because the written sentence is usually just a record of the actual sentence required to be pronounced in open court.” Justice v. State, 674 So.2d 123, 125 (Fla.1996) (citing Vasquez v. State, 663 So.2d 1343, 1349 (Fla. 4th DCA 1995)). As a result, when there is a discrepancy between the written sentence and “the oral pronouncement, the oral pronouncement prevails.” Justice, 674 So.2d at 125.
In Akins, the Second District concluded the trial court’s failure to orally pronounce Akins’ HFO designation and its subsequent modification of Akins’ judgment and sentence to reflect an HFO designation constituted an illegal sentence and violated double jeopardy. Akins, — So.3d at-. In so concluding, *270 the Second District relied on Ashley II, 850 So.2d 1265; Evans, 675 So.2d 1012; Barron v. State, 827 So.2d 1063 (Fla. 2d DCA 2002); and White v. State, 892 So.2d 541 (Fla. 1st DCA 2005).
In Ashley II, we granted discretionary review based on express and direct conflict between the First District’s decision in Ashley v. State (Ashley I), 772 So.2d 42 (Fla. 1st DCA 2000), and the Fourth District’s decision in Evans, 675 So.2d 1012. There, we observed that the issue in both Ashley I and Evans was whether double jeopardy is violated when a trial court vacates an imposed sentence and resen-tences the defendant to what amounts to a more onerous sentence after the defendant has begun serving the original sentence. See Ashley II, 850 So.2d at 1266.
In Ashley I, Ashley was convicted of possession of a firearm by a convicted felon. Ashley I, 772 So.2d at 42-43. The State filed notice of intent to classify Ashley as a habitual violent felony offender (HVFO). Id. at 42. There, the trial judge was presented with evidence of Ashley qualifying as an HVFO, and it was argued that the judge had discretion in deciding whether to sentence Ashley as an HVFO. Id. at 42-43. During the actual sentencing, the trial court failed to pronounce Ashley an HVFO; instead the court orally pronounced Ashley an HFO and sentenced him to twenty-five years. Id. at 42. However, the written judgment and sentence reflected that Ashley was sentenced as an HVFO and sentenced to twenty-five years with no minimum term. Id. Subsequently, Ashley reappeared in court and the trial judge orally resentenced Ashley as an HVFO to serve twenty-five years with a ten-year minimum term. Id. On appeal, Ashley argued the alteration in the written judgment and sentence amounted to a double jeopardy violation. The First District concluded that the trial court’s imposition of an HFO sentence was “the result of a simple mistake about what had been noticed and then proven the day before. It was not a discretionary judgment based on the facts to impose a lighter sentence.” Id. at 43 (citing Harris v. State, 645 So.2d 386, 388 (Fla.1994)).
In Evans, Evans entered a plea agreement, whereby he agreed that he qualified as an HFO and that he would be sentenced as an HFO if he violated his probation. Evans, 675 So.2d at 1013. Evans then committed a technical violation of his probation and was sentenced as an HFO. Id. Evans’ sentences were suspended and he was given probation, but his HFO designation was not set aside. Id. Evans’ sentences were vacated and he was resen-tenced on the initial VOP. However, at resentencing, the trial court did not state that Evans would retain his HFO designation. See id. at 1014. Two days later, the State filed a motion to clarify the sentence because it did not reflect Evans’ HFO designation. Id. Evans objected, arguing that to amend his judgment and sentence to reflect the HFO designation amounted to a double jeopardy violation. Id. The trial court amended the judgment and sentence. Id. On appeal, the Fourth District concluded that even if the trial court’s failure to impose the HFO designation during the oral pronouncement was an oversight, the trial court’s subsequent clarification was erroneous. Id. The Fourth District reasoned that once a legal sentence is imposed, jeopardy attaches and the defendant cannot be sentenced to a greater term of imprisonment. Id.
On review, we agreed with the Fourth District’s reasoning in Evans. Ashley II, 850 So.2d at 1267. We considered our previous decision in Justice, in which we explained that pursuant to “judicial policy ... the actual oral imposition of sanctions should prevail over any subsequent written *271 order to the contrary.” 674 So.2d at 125 (citing Vasquez, 668 So.2d at 1349). There, this Court’s conclusion was based, in part, on the proposition that “written sentences are usually just a record of the actual sentence required to be pronounced in open court.” Ashley II, 850 So.2d at 1268. Thus, this Court approved Evans and disapproved Ashley I, noting that “[t]o hold otherwise does serious harm to the double jeopardy principles which have guided our courts for centuries.” Ashley II, 850 So.2d at 1268-69.
Furthermore, in White, the First District reversed the trial court’s summary denial of White’s rule 3.800(a) motion. White, 892 So.2d at 542. There, White was originally sentenced as an HFO. See id. Subsequently, White committed technical violations of his probation and was sentenced to nine years’ imprisonment. Id. However, White was not designated as an HFO at that time. Id. The First District relied on this Court’s holding in Ashley II and the Fourth District’s decision in Evans in recognizing that “upon a revocation of probation, a trial court must orally pronounce habitual felony offender status, even when the appellant was initially sentenced as a habitual felony offender for the substantive offense and the designation has not been set aside.” White, 892 So.2d at 542. In reversing, the First District explained that because the trial court failed to sentence White as an HFO at his revocation of probation hearing, his sentence was illegal since it exceeded the statutory maximum. Id. The First District’s holding in White ultimately provides that upon revocation of probation, a trial court must orally pronounce habitual offender status, even when the defendant was initially sentenced as a habitual felony offender for the substantive offense and the designation has not been set aside. Otherwise, the limit of the defendant’s sentence is prescribed by the statutory maximum. WMie, 892 So.2d at 542. The Second District, in Barron, 827 So.2d 1063, reached a similar result as the Fourth District did in Evans.
Based on the aforementioned, we conclude that the trial court’s subsequent imposition of the HFO designation in Akins constitutes an illegal sentence because Akins’ sentence was made more onerous after he began serving it. However, in its decision below, the Second District acknowledged that its holding in Akins was consistent with this Court’s holding in Ashley II, but appeared to conflict with the Third District’s decision in Mann, 851 So.2d 901.
The instant case is distinguishable from Mann. In Mann, the trial court clearly misspoke during sentencing; the record revealed that both the state and defense acknowledged that Mann would be sentenced as a habitual violent felony offender (HVFO) and the trial court imposed the mandatory minimum for an HVFO during sentencing. Mann, 851 So.2d at 902. Mann’s sentence was not increased after it was imposed, and therefore double jeopardy was not offended. See id. Thus, the Third District affirmed the trial court’s denial of Mann’s motion to correct illegal sentence. See id. This is unlike Ashley II, where the alteration to Ashley’s judgment and sentence resulted in an increase to his sentence and thus violated double jeopardy. Mann, 851 So.2d at 903.
As this Court noted in Ashley II:
Generally, the oral pronouncement prevails unless the oral pronouncement is in error due to a clerical error such as the calculation of jail credit. See Martindale v. State, 678 So.2d 883, 884 (Fla. 4th DCA 1996).[n.3]
[n.3]. Florida Rule of Criminal Procedure 3.800(b) specifically provides that a motion to correct a scrivener's error may be filed by the *272 State. A scrivener's error literally refers to a written error. The definition for scrivener's error in Black’s Law Dictionary directs the reader to "[s]ee clerical error.” Black's Law Dictionary 1349 (7th ed. 1999). However, we have defined scrivener's error as those "clerical or ministerial errors in a criminal case that occur in the written sentence, judgment, or order of probation or restitution. The term scrivener’s error refers to a mistake in the written sentence that is at variance with the oral pronouncement of sentence or the record but not those errors that are the result of a judicial determination or error.” Amendments to Fla. Rules of Criminal Procedure 3.111(e) & 3.800, 761 So.2d 1015, 1023 (Fla.2000) (court commentary) (emphasis added).
We recognize that the trial court’s failure to state during its oral pronouncement of sentence that it was sentencing Ashley as a habitual violent felony offender may have been a simple mistake. However, based on the prior precedent from this Court, we must approve the Fourth District’s opinion in Evans and disapprove the First District’s decision in Ashley, because the oral pronouncement of sentencing controls. To hold otherwise does serious harm to the double jeopardy principles which have guided our courts for centuries.
Ashley II, 850 So.2d at 1268-69.
In both Akins and Evans, the trial court completely neglected to orally pronounce the HFO sentence or expressly designate defendant as an HFO in any way. The parties did not agree to an HFO sentence during the hearing, and the trial court did not use any language indicating that an HFO sentence was being imposed. Similarly, in the instant case, the trial court’s oral pronouncement, despite defense counsel’s brief reference to Akins’ habitualized status, does not definitively demonstrate any intent to designate Akins as an HFO:
THE COURT: [T]he only reason I didn’t give you the 10 is because I know that that [Department of Corrections] is going to take some [gain] time away from you on that 20 years that you’ve already served. That’s the way they work. And I don’t control the Department of Corrections, so I’m trying to give you some equity here. But I’m also letting you know that you’ve had your last chance the last time. So you — in effect, out of the 10 years that you had, I’ve imposed five.
THE COURT: And we’re just going to leave it at that.
THE COURT: And you’re not any longer going to be on probation. So when you get out of prison, you are on your own.
The absence of any clear intent of designating Akins as an HFO and the trial court’s subsequent imposition of an HFO status to Akins’ VOP judgment and sentence after Akins began serving his sentence violated double jeopardy and amounted to an illegal sentence and manifest injustice. Because Akins’ sentence was illegal, the Second District was proper in correcting it. Accordingly, we approve the Second District’s decision in Akins and answer the certified question in the affirmative.
It is so ordered.
PARIENTE, QUINCE, LABARGA, and PERRY, JJ., concur.
LEWIS, J., concurs in result.
CANADY, C.J., dissents with an opinion, in which POLSTON, J., concurs.

.Pursuant to section 775.084, Florida Statutes (1991), a habitual felony offender is defined as:
(1) As used in this act:
(a) “Habitual felony offender” means a defendant for whom the court may impose an extended term of imprisonment, as provided in this section, if it finds that:
1. The defendant has previously been convicted of any combination of two or more felonies in this state or other qualified offenses;
2. The felony for which the defendant is to be sentenced was committed within 5 years of the date of the conviction of the last prior felony or other qualified offense of which he was convicted, or within 5 years of the defendant’s release, on parole or otherwise, from a prison sentence or other commitment imposed as a result of a prior conviction for a felony or other qualified offense, whichever is later;
3.The defendant has not received a pardon for any felony or other qualified offense that is necessary for the operation of this section; and
*264 4. A conviction of a felony or other qualified offense necessary to the operation of this section has not been set aside in any post-conviction proceeding.