# Third District Court of Appeal

**State of Florida**

Opinion filed June 6, 2018.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D17-2146
Lower Tribunal No. 07-43499
_____

**Elton Graves,**
Appellant,

vs.

**The State of Florida,**
Appellee.

An Appeal under Florida Rule of Appellate Procedure 9.141(b)(2) from the Circuit Court for Miami-Dade County, Ellen Sue Venzer, Judge.

Elton Graves, in proper person.

Pamela Jo Bondi, Attorney General, and Joanne Diez, Assistant Attorney General, for appellee.

Before SALTER, EMAS and LOGUE, JJ.

PER CURIAM.

Elton Graves appeals the denial of his motion under Florida Rule of Criminal Procedure 3.800 for the correction of a life sentence of imprisonment he contends is illegal. Finding his position well taken, we reverse and remand the case for resentencing.

I.      Procedural History and Life Sentence on Count 1

In an amended information filed in February 2010, Graves was charged with four counts: (1) attempted second degree murder of a law enforcement officer engaged in the lawful performance of his duty; (2) resisting a law enforcement officer with violence; (3) attempting to deprive a law enforcement officer of the officer's weapon; and (4) assault on a law enforcement officer. The alleged crime date was December 12, 2007. Before trial, the State dismissed count 4.

Following a jury trial, Graves was convicted of counts 1 and 2 and acquitted as to count 3. Graves was adjudicated a habitual felony offender ("HFO"). He was sentenced to life imprisonment on count 1 and ten years on count 2. At the sentencing hearing, the State and defense both represented to the trial court[1] that the maximum sentence on count 1 as an HFO was thirty years, with a ten year concurrent sentence as an HFO on count 2. The trial court recessed the sentencing hearing to allow the State and defense to consider the trial court's reading of the applicable statutes and conclusion that the maximum sentence on count 1 was life.

_____

[1] The Judge who heard the 2017 motion under rule 3.800 was a successor to the Judge who tried the case and sentenced Graves.

2

After that recess, the State and defense continued to agree that the maximum punishment for count 1 was 30 years.[2]  On the second page of the sentencing scoresheet, the "maximum sentence in years" was entered in handwriting to indicate "30 as HO."  Construing section 775.0823, Florida Statutes (2007), the trial court again concluded that the maximum sentence on count 1 was life and imposed that sentence.

In Graves' appeal from the conviction and sentence,[3] the Office of the Public Defender did not raise the count 1 sentencing issue.  In 2012 and 2014, Graves filed pro se post-conviction motions in the trial court alleging that his count 1 sentence was illegal.  In February 2013, the trial court denied the 2012 motion, concluding that:

> The trial court utilized Florida Statutes 782.04 and 775.0823 in determining the range of punishment available to the defendant at sentencing.  The trial court further determined that in the instant case the Attempted Second Degree Murder of a Law Enforcement conviction was a first degree felony punishable by life when interpreting Florida Statutes 775.0823 and 782.04 together.  As such, the defendant's enhancement as a Habitual Offender lawfully made his possible sentencing range up to Life Imprisonment.  As such, the trial court's imposition of a Life Sentence in State Prison as a Habitual Offender of count One of the Information was not in error and was permissible.

---

[2]  The State advised the trial court after the recess that there was a "loophole in the statute."

[3]  Graves v. State, 77 So. 3d 1269 (Fla. 3d DCA 2011) (per curiam affirmed).

The defendant did not appeal the trial court's denial of his 2012 motion. In 2014, Graves filed a second motion under rule 3.800(a) that conceded the motion was successive, but contended that the manifest injustice of the illegal life sentence merited relief. The trial court adopted the State's response that the motion was successive and, because the first order had not been appealed, it was barred as a matter of collateral estoppel. Graves' appeal to this Court was unsuccessful.[4]

The motion under rule 3.800 at issue in the present case was filed in 2017. It raised again the alleged illegality of the life sentence imposed as to count 1. The trial court denied the motion on three grounds: (1) collateral estoppel, based on the consideration and denial of his prior motions; (2) Graves' was properly adjudicated and sentenced as an HFO; and (3) Graves was given proper notice of the State's intention to seek HFO sentencing. This appeal followed.

II.    Analysis

We affirm without additional comment the trial court's rulings on the propriety of notice and adjudication regarding Graves' status as an HFO. The first issue is more complex. We are not precluded from review of the legality of Graves' life sentence on count 1 despite his prior unsuccessful motions on that issue. State v. Akins, 69 So. 3d 261, 268 (Fla. 2011) ("Under Florida law, appellate courts have 'the power to reconsider and correct erroneous rulings [made

---

[4] Graves v. State, 150 So. 3d 1154 (Fla. 3d DCA 2014) (per curiam affirmed).

4

in earlier appeals] in exceptional circumstances and where reliance on the previous decision would result in manifest injustice'" (quoting Muehleman v. State, 3 So. 3d 1149, 1165 (Fla. 2009) (alteration in original)). See also Parker v. State, 873 So. 2d 270, 278 (Fla. 2004).

### A.    The Pertinent Statutes as of 2007

The statutory issue confronted by counsel for the State and for Graves at the 2010 sentencing hearing—the subject of a recess in that hearing to permit counsel to consider the trial court's analysis (which, as noted, counsel for both the State and Graves were unwilling to endorse)—arises because of four separate statutes and the history of section 775.0823.

First, section 782.04(2), Florida Statutes (2007),[5] defines second degree murder and provides that the completed offense "constitutes a felony of the first degree, punishable for a term of years not exceeding life or as provided in s. 775.082, s. 775.083, or 775.084." Second, section 777.04(4)(c) applies to an attempted second degree murder, classifying the offense(one degree lower than the completed offense) as "a felony of the second degree, punishable as provided in s. 775.082, 775.083, or s. 775.084."

Third, section 775.084 addresses, among other things, the procedure for, and consequences of, adjudication of a defendant as an HFO. Subparagraph (4)(a)2 of

---

[5]  Each of the statutory sections cited in this portion of the opinion is as in effect at the time of the offense, December 2007.

that statute provides that a court may sentence an HFO, in the case of a felony of the second degree, "for a term of years not exceeding 30." Thus, under these three provisions, it is clear that Graves' maximum sentence for attempted second-degree murder would be 30 years as an HFO. However, Graves was convicted of attempted second-degree murder of a law enforcement officer, and the question presented in this case is whether, and the extent to which, his maximum sentence is impacted by section 775.0823, Florida Statutes (2007). The version of that statute applicable to Graves' 2007 crime provides in full as follows:

> The Legislature does hereby provide for an increase and certainty of penalty for any person convicted of a violent offense against any law enforcement or correctional officer, as defined in s. 943.10(1), (2), (3), (6), (7), (8), or (9); against any state attorney elected pursuant to s. 27.01 or assistant state attorney appointed under s. 27.181; or against any justice or judge of a court described in Art. V of the State Constitution, which offense arises out of or in the scope of the officer's duty as a law enforcement or correctional officer, the state attorney's or assistant state attorney's duty as a prosecutor or investigator, or the justice's or judge's duty as a judicial officer, as follows:
>
> (1) For murder in the first degree as described in s. 782.04(1), if the death sentence is not imposed, a sentence of imprisonment for life without eligibility for release.
>
> (2) For attempted murder in the first degree as described in s. 782.04(1), a sentence pursuant to s. 775.082, s. 775.083, or s. 775.084.
>
> (3) For attempted felony murder as described in s. 782.051, a sentence pursuant to s. 775.082, s. 775.083, or s. 775.084.
>
> (4) For murder in the second degree as described in s. 782.04(2) and (3), a sentence pursuant to s. 775.082, s. 775.083, or s. 775.084.

6

(5) For attempted murder in the second degree as described in s. 782.04(2) and (3), a sentence pursuant to s. 775.082, s. 775.083, or s. 775.084.

(6) For murder in the third degree as described in s. 782.04(4), a sentence pursuant to s. 775.082, s. 775.083, or s. 775.084.

(7) For attempted murder in the third degree as described in s. 782.04(4), a sentence pursuant to s. 775.082, s. 775.083, or s. 775.084.

(8) For manslaughter as described in s. 782.07 during the commission of a crime, a sentence pursuant to s. 775.082, s. 775.083, or s. 775.084.

(9) For kidnapping as described in s. 787.01, a sentence pursuant to s. 775.082, s. 775.083, or s. 775.084.

(10) For aggravated battery as described in s. 784.045, a sentence pursuant to s. 775.082, s. 775.083, or s. 775.084.

(11) For aggravated assault as described in s. 784.021, a sentence pursuant to s. 775.082, s. 775.083, or s. 775.084.

Notwithstanding the provisions of s. 948.01, with respect to any person who is found to have violated this section, adjudication of guilt or imposition of sentence shall not be suspended, deferred, or withheld.

Section 775.0823 purports to establish "an increase and certainty of penalty" for any person convicted of a violent offense against law enforcement officers and other defined categories of individuals in the judicial, law enforcement, and corrections system. Section 775.0823(5) states "For attempted murder in the second degree as described in s. 782.04(2) and (3), a sentence pursuant to s. 775.082, s. 775.083, or s. 775.084."

Here is the problem. Although section 775.0823(5) addresses <u>attempted</u> second degree murder, the modifier "as described in s. 782.04(2)" relates to the <u>completed</u> crime of second degree murder, not an attempt. It appears from the sentencing transcript that the trial court believed that section 775.0823(5) was, in effect, a reclassification statute, requiring the trial court to treat defendant's conviction for attempted second-degree murder (a second-degree felony) <u>as if it was the completed</u> crime of second-degree murder (a first degree felony punishable by life). In doing so, the court concluded that the life sentence was mandated by section 775.0823 and its preamble, "to provide for an increase and certainty of penalty for any person convicted of a violent offense against any [law enforcement officer]." However, upon our de novo review of the statutory language, as well as the history of the legislative changes to that statute, we conclude that section 775.0823(5) does not authorize the trial court to "reclassify" the crime of attempted second-degree murder from a second-degree felony to a first-degree felony punishable by life by treating attempted second-degree murder as if it was a completed crime of second-degree murder.

In this particular case, we harmonize, to the extent we can, the apparent inconsistency between sections 775.0823(5) and 777.04(4)(c), by reviewing the original version of section 775.0823 and its subsequent amendments, and by applying well-established rules of statutory construction. As a result, we conclude

8

that we cannot ignore the command of section 777.04(4)(c), which reduces Graves' base offense (second degree murder) from a felony of the first degree punishable by life to a felony of the second degree when the crime charged is merely attempted but not completed. We also cannot ignore the anomalous treatment of both an attempted second degree murder of a law enforcement officer and a completed second degree murder of a law enforcement officer as equivalent offenses for sentencing purposes under the interpretation applied by the trial court.

The trial court read section 775.0823 to mean that an "attempted second degree murder" committed upon a law enforcement officer must be treated for sentencing purposes as a "second degree murder" committed upon a law enforcement officer. The trial court concluded this was the only way to give proper meaning to that statute's introductory language of intent: "The Legislature does hereby provide for an increase and certainty of penalty for any person convicted of a violent offense against any law enforcement or correctional officer . . . ." § 775.0823 (emphasis provided).

However, we do not agree with the trial court's statutory construction, and we conclude that the confusion engendered by the above-quoted language of statutory intent stems from the statutory amendments following its original enactment.

B.    Original Enactment of Section 775.0823

9

Section 775.0823 of the Florida Statutes was first enacted in 1989 as part of the "Law Enforcement Protection Act." See Ch. 89-100, § 1, Laws of Fla. Section 775.0823, as originally enacted, provided in pertinent part:

Any provision of law to the contrary notwithstanding, the Legislature does hereby provide for an increase and certainty of penalty for any person convicted of a violent offense against any law enforcement or correctional officer. . . . by imposing a mandatory minimum sentence without possibility of early release through any gain-time, provisional release credits, conditional release supervision, supervised community release, transition assistance program, or parole during the mandatory minimum portion of the sentence, as follows:

(1) For murder in the first degree as described in s. 782.04(1), if the death sentence is not imposed, a sentence of imprisonment for life without eligibility for release shall be imposed.

(2) For murder in the second degree as described in s. 782.04(2) and (3), a sentence of imprisonment for 25 years before eligibility for release shall be imposed.

(3) For murder in the third degree as described in s. 782.04(4), a sentence of imprisonment for 15 years before eligibility for release shall be imposed.

(4) For manslaughter as described in s. 782.07 during the commission of a crime, a sentence of imprisonment for 10 years before eligibility for release shall be imposed.

(5) For kidnapping as described in s. 787.01, a sentence of imprisonment for 15 years before eligibility for release shall be imposed.

(6) For aggravated battery as described in 784.045, a sentence of imprisonment for 3 years before eligibility for release shall be imposed.

(7) For aggravated assault as described in s. 784.021, a sentence of <u>imprisonment for 1 year before eligibility for release</u> shall be imposed.

Any person convicted of an offense under this section is <u>ineligible to receive provisional release credits during any portion of his sentence</u>. Notwithstanding the provisions of s. 948.01, with respect to any person who is found to have violated this section, adjudication of guilt or imposition of sentence shall not be suspended, deferred, or withheld.

(Emphasis provided.)

As even a cursory reading reveals, the statute as originally enacted did indeed "provide for an increase and certainty of penalty" for certain offenses committed against law enforcement officers, by (1) establishing mandatory minimum penalties and (2) eliminating eligibility for provisional release credits for any person convicted and sentenced under this section.

C.    The 1993 Amendment

This statute was amended on several occasions in the intervening years. For our purposes, however, the first pertinent amendment occurred in 1993, following Florida's adoption of sentencing guidelines. <u>See</u> Ch. 93-406, § 16, Laws of Fla. Consistent with the adoption of sentencing guidelines, the Legislature amended section 775.0823 in two important ways, by: (1) removing all mandatory minimum sentences provided in the original 1989 version of the statute; and (2) requiring that all sentences for violation of this section be imposed "pursuant to the sentencing guidelines." Additionally and importantly, the Legislature in 1993 also

11

amended the sentencing guidelines provisions (section 921.0014) and created a sentencing guidelines worksheet. In doing so, the Legislature added a so-called "Law Enforcement Multiplier." See Ch. 93-406, § 12, Laws of Fla. This multiplier significantly increased the number of sentencing points to be assessed against a defendant convicted of a violent offense against a law enforcement officer:

> Law enforcement protection: If the primary offense is a violation of the Law Enforcement Protection Act under s. 775.0823(2), (3), (4), or (5), then **the subtotal sentence points are multiplied by 2.0.** If the primary offense is a violation of s. 775.087(2)(a)2. or s. 775.0875(1), or of the Law Enforcement Protection Act under s. 775.0823(6) or (7), then the subtotal sentence points are multiplied by 1.5.

§ 921.0014 (emphasis provided).[6]

As a result of the implementation of sentencing guidelines and the creation of the "Law Enforcement Multiplier," mandatory minimum sentences were no longer part of the framework of section 775.0823, and the Legislature therefore removed that portion of the introductory language of the 1989 version of the statute addressing mandatory minimum sentencing, but chose to retain the general intent language. Below is the 1993 amended version of section 775.0823, with the deleted language bracketed and underscored for ease of reference:

> Any provision of law to the contrary notwithstanding, the Legislature does hereby provide for an increase and certainty of penalty for any

---

[6] Again, a multiplier of 2.0 was used on Graves' sentencing scoresheet in the present case.

person convicted of a violent offense against any law enforcement or correctional officer . . . [by imposing a mandatory minimum sentence without possibility of early release through any gain time, provisional release credits, conditional release supervision, supervised community release, transition assistance program, or parole during the mandatory minimum portion of the sentence,] as follows:

(1) For murder in the first degree as described in s. 782.04(1), if the death sentence is not imposed, a sentence of imprisonment for life without eligibility for release [shall be imposed].

(2) For murder in the second degree as described in s. 782.04(2) and (3), a sentence pursuant to the sentencing guidelines [of imprisonment for 25 years before eligibility for release shall be imposed].
(3) For murder in the third degree as described in s. 782.04(4), a sentence pursuant to the sentencing guidelines [of imprisonment for 15 years before eligibility for release shall be imposed].

(4) For manslaughter as described in s. 782.07 during the commission of a crime, a sentence pursuant to the sentencing guidelines [of imprisonment for 10 years before eligibility for release shall be imposed].

(5) For kidnapping as described in s. 787.01, a sentence pursuant to the sentencing guidelines [of imprisonment for 15 years before eligibility for release shall be imposed].

(6) For aggravated battery as described in s. 784.045, a sentence pursuant to the sentencing guidelines [of imprisonment for 3 years before eligibility for release shall be imposed].

(7) For aggravated assault as described in s. 784.021, a sentence pursuant to the sentencing guidelines [of imprisonment for 1 year before eligibility for release shall be imposed].

[Any person convicted of an offense under this section is ineligible to receive provisional release credits during any portion of his sentence.] Notwithstanding the provisions of s. 948.01, with respect to any person who is found to have violated this section, adjudication of guilt

or imposition of sentence shall not be suspended, deferred, or withheld.

D.    The 2001 Amendment

Section 775.0823 has been further amended over the years, to comport with corresponding changes to the sentencing guidelines, and to add certain offenses subject to sentencing under this statute.  In 2001, however, the Legislature eliminated reference to the sentencing guidelines (and the later-enacted Criminal Punishment Code) and simply declared that (other than first-degree murder) all sentences for a violation of this section shall be imposed "pursuant to s. 775.082, s. 775.083, or s. 775.084" of the Florida Statutes.  The 2001 version (the version applicable on December 12, 2007, the date of Graves' crime) reads in full as shown in section II.A. of this opinion, with this introductory phrase:

> **The Legislature does hereby provide for an increase and certainty of penalty for any person convicted of a violent offense against any law enforcement or correctional officer**. . . .

We highlighted and underscored that introduction, as it was contained in the original 1989 version of the statute and has somehow survived all of the subsequent amendments.  However, it can best be characterized as vestigial, given that the statute no longer contains the mandatory minimum provisions or prohibition against early release or provisional release credits, which served to implement the 1989 version's expressed legislative intent.  In other words, and notwithstanding its introductory language, the only "increase and certainty of

14

penalty" that exists for offenses under section 775.0823 is the "Law Enforcement Multiplier" provided in section 921.0014 (2001) and Florida Rule of Criminal Procedure 3.704(20).

E.      This Case

The trial court in the present case, in an understandable effort to give meaning to the statutory language "increase and certainty of penalty," construed the statutory language as requiring the trial court to treat <u>attempted</u> second-degree murder of a law enforcement officer (a second degree felony punishable by up to 15 years in prison (up to 30 years in the case of an HFO)) as if it was a <u>completed</u> second-degree murder (a first degree felony punishable by up to life). This was error. The statute did not, in any of its iterations, expressly or implicitly reclassify an attempted second-degree murder in this fashion.

The Legislature certainly knows what language to use in reclassifying an offense to a higher degree. <u>See, e.g.</u>, § 874.04, Fla. Stat. (2018) ("Upon a finding by the factfinder that the defendant committed the charged offense for the purpose of benefiting, promoting, or furthering the interests of a criminal gang," the penalty may be enhanced; section 2(b) of that statute specifies that "A felony of the second degree may be punished as if it were a felony of the first degree."). Similarly, <u>see</u> § 775.087, Fla. Stat. (2018) ("Possession or use of weapon; aggravated battery; felony reclassification; minimum sentence.").

But section 775.0823 contains no equivalent language that could reasonably be construed as reclassifying an attempted crime to a higher degree offense by treating it as if it were a completed crime. The "increase and certainty of penalty" language is a holdover from the originally-enacted version of the statute, and the only rational conclusion, based on the statute's history as described herein, is that the continued presence appears to be an oversight in the legislative amendatory process.[7]

It is of course "well settled that legislative intent is the polestar that guides a court's statutory construction analysis[,]" Knowles v. Beverly Enters.-Fla., Inc., 898 So. 2d 1, 5 (Fla. 2004), and our starting point is the actual language used by the legislature.

We also recognize it is "the general rule, construing statutes, 'that construction is favored which gives effect to every clause and every part of the statute, thus producing a consistent and harmonious whole. A construction which would leave without effect any part of the language used should be rejected, if an interpretation can be found which will give it effect.' " Quarantello v. Leroy, 977 So. 2d 648, 652 (Fla. 5th DCA 2008) (citing Goode v. State, 39 So. 461, 463 (Fla. 1905)) (additional citations omitted).

---

[7] A review of the legislative history and staff analysis of the amendments to section 775.0823 provides no additional guidance or insight.

16

We cannot ignore the expression of legislative intent that has been carried over from its original enactment in 1989 to the 2007 version applicable to the case before us. However, neither can we ignore the very obvious fact that the intervening amendments removed those provisions which fulfilled and implemented that intent to create an "increase and certainty of penalty." Stated simply, the 2007 version, while still containing that language of intent, no longer contains any provision to effectuate that intent. Even if we were to find that the language relied upon by the trial court was ambiguous and susceptible to differing reasonable interpretations, we would apply, as a canon of last resort, the rule of lenity provided in section 775.021(1): "The provisions of this code and offenses defined by other statutes shall be strictly construed; when the language is susceptible of differing constructions, it shall be construed most favorably to the accused."

We conclude that the trial court's construction of the statute, equating attempted second-degree murder or a law enforcement officer to the completed crime of second-degree murder, is an unreasonable construction not supported by a plain reading of the statutory language. Instead, the only reasonable construction, consistent with the plain language and the statute's amendatory history, is that the reference to "attempted murder in the second degree as described in s.782.04(2)" is merely a reference to the only statutory provision where the offense of second

17

degree murder and its constituent elements is set forth. Had the Legislature intended that the crime of attempted second degree murder of a law enforcement officer (or any other enumerated attempted offense under section 775.0823) be treated for sentencing purposes as a completed offense, it surely would have said so.[8] The statute, which contains the same expression of legislative intent as that in the original version enacted in 1989, no longer contains the accompanying provisions that implemented such intent. In the absence of any statutory language which actually provides for an increase or certainty in penalty, we find that Graves was convicted of a second degree felony and, as an HFO, was subject to a maximum sentence of 30 years in prison. The sentence of life in prison as an HFO was therefore illegal.

Noting the difficulty encountered by the State and defense counsel, as well as the trial judge, with this conflict in the criminal code provisions described in this opinion, we direct the Clerk to forward a copy of this opinion to the Chief of

---

[8] Adopting the trial court's construction of section 775.0823 would lead to this unreasonable result: a conviction for attempted first-degree murder of a law enforcement officer under section 775.0823(2) would be treated as a conviction for first-degree murder and reclassified to a capital felony punishable by death (see sections 782.04(1); 775.082(1)(a)-(b)). However, a statute that subjects a defendant convicted of a nonhomicide to the death penalty has been held unconstitutional. See Kennedy v. Louisiana, 554 U.S. 407 (2008) (holding the Eighth Amendment prohibits imposition of the death penalty for the rape of a child where the crime did not result, and was not intended to result, in the death of the victim).

Legislative Affairs, Office of the State Courts Administrator, to be considered in the annual statutory clarification process.

Based on the foregoing, we reverse the order denying Graves' motion and remand for a resentencing, at which Graves is entitled to be present, consistent with this opinion.